**UNITED STATES of America et al.,**
**Plaintiffs,**

v.

**KANSAS CITY LUTHERAN HOME AND HOSPITAL ASSOCIATION et al.,**
**Defendants.**

**No. 17020–1.**

United States District Court
W. D. Missouri, W. D.

Jan. 10, 1969.

Calvin K. Hamilton, U. S. Atty., Paul Anthony White, Asst. U. S. Atty., Kansas City, Mo., for plaintiffs.

Donald E. Lyons, Wm. B. Springer, Walter J. Kennedy, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

This case, involving a complaint to enforce an Internal Revenue summons issued in connection with the determination of an estate tax, was submitted on a stipulation of facts as supplemented by the testimony of one witness taken at an evidentiary hearing held January 6, 1969. The defendant hospital and the intervening defendant executor contend that the hospital records of the deceased should not be produced pursuant to the summons because such production would allegedly violate the physician-patient privilege established by Section 491.060, V.A.M.S. The defendant executor, but not the defendant hospital, also contends that such hospital records are not relevant and material and that the summons is defective for the reason that no formal notice of such summons was given either to the Executor or his attorneys.

The orderly processing of this case was delayed by the Government's filing a motion for an order to show cause after the case was at issue. Such procedure was obviously inconsistent with that approved in Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964) and United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). The defendant and intervenors accordingly filed a motion to strike the Government's motion for a show cause order. The briefs submitted in connection with those motions, however, fully dealt with the question of whether the State physician-patient privilege must be recognized in connection with the Internal Revenue summons here involved.

Both motions were denied at a preliminary pretrial conference and, in accordance with directions made at that time, the parties thereafter stipulated almost all of the relevant facts. As above stated, the case was submitted on that stipulation and the testimony of Mrs. Clarice C. Hahn, the estate tax attorney substituted as a party plaintiff in lieu of Gregory P. Vatteroot, who is no longer employed by the I.R.S.

■ We first rule the two contentions which defendant intervenors make in addition to the physician-patient question which is also raised by the defendant hospital. The stipulation makes clear that no one, including the intervenor, was prejudiced by lack of formal notice of the issuance of the summons. Counsel for the intervening executor appeared at the time the summons was served and their objection to production was recognized by the hospital which stated that it wanted the protection of a court order before disclosing records for which a privilege had been claimed.

Written notice would not have afforded any additional right and we therefore rule that intervenor's contention in regard to notice is not tenable.

■ Intervenor's contention in regard to relevancy and materiality is not well taken. The briefs of the parties and the undisputed factual situation make clear that the question of whether particular transfers were or were not made by the decedent in contemplation of death is a question that will directly affect the determination of the amount of the estate tax to be paid. Information likely to be revealed by the documents sought by the summons will obviously contain data relevant and material to that prime issue. The argument that the Government may presently issue a thirty day letter without making an appropriate examination of relevant and material evidence does not touch the question of whether the State statute in effect prohibits the examination of the hospital records sought by the Internal Revenue summons. Intervenor's materiality and relevancy contention is not tenable. We turn now to physician-patient privilege question and state our reasons why the joint contention of the defendant and intervenor is not tenable.

■ Both defendants argue "that the issue as to whether state or federal law applies in determining whether or not a privilege exists has been finally determined by the leading case of Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L. Ed.2d 459 (1964), and that such case recognizes a federal law on privilege." *Reisman* supports neither contention because that case did not directly decide either of those questions.

Indeed, the clear implication of *Reisman* when viewed in light of the cases which that case cited with approval, is that federal law controls in a proceeding to enforce a summons issued by the Internal Revenue Service and that while a privilege created by state law may be recognized as a matter of federal common law, the question of such recognition is not controlled by either the statutes or rules of decision of the state in which the federal court sits.

*Reisman* cited Falsone v. United States (5th Cir. 1953), 205 F.2d 734; In re Albert Lindley Lee Memorial Hospital (2nd Cir. 1953), 209 F.2d 122; and Sale v. United States (8th Cir. 1956), 228 F. 2d 682, with approval. Each of those cases are based upon the rationale that federal law is controlling in a case such as this. *Falsone* expressly rejected the contention that "the competency and privilege of witnesses is governed by state laws" in a proceeding to enforce an Internal Revenue summons. In reliance upon United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210, 82 A.L.R. 1376 (1931); and the 8th Circuit cases of Brownson v. United States (8th Cir. 1929), 32 F.2d 844, and Doll v. Commissioner of Internal Revenue (8th Cir. 1945), 149 F.2d 239, and the Fifth Circuit case of Shambaugh v. Scofield (5th Cir. 1942), 132 F.2d 345, that court held in *Falsone* that the federal statutes authorizing the issuance of an Internal Revenue Service summons were enacted to effectuate a federal constitutional power and are therefore the supreme law of the land, to which any conflicting state law, constitutional or statutory, must yield.

In the *Albert Lindley Lee Memorial Hospital* case, the Second Circuit rejected appellant's contention that the law of New York controlled the question of physician-patient privilege. The Second

Circuit stated its agreement with *Falsone* from the Fifth Circuit and expressly held that "[the] determination of what evidence is admissible in an income tax investigation authorized by 26 U.S.C.A. § 3614(a), is a matter to be decided according to federal law."

Sale v. United States, an Eighth Circuit case followed *Falsone* and *In re Albert Lindley Lee Memorial Hospital*, although, on the particular facts there involved, it was not necessary to reach the question of whether state or federal law was controlling.

Subsequent to the three decisions from the Fifth, Second and Eighth Circuits just noted, the Ninth Circuit decided Baird v. Koerner (9th Cir. 1960), 279 F.2d 623, 95 A.L.R.2d 303. *Baird*, as noted in Federal Trade Comm. v. St. Regis Paper Co. (7th Cir. 1962), 304 F.2d 731 at 734, presented a factual situation which could be said to be distinguishable from that presented in *Falsone, Albert Lindley Lee Memorial Hospital* and *Sale*. Colton v. United States (2nd Cir. 1962), 306 F.2d 633, assumed, however, that *Baird* was not distinguishable and simply stated that "we do not agree with the Court of Appeals for the Ninth Circuit [citing *Baird*] that a hearing held by the Internal Revenue Service under § 7602 * * * is a 'civil action' governed by state evidence law under Rule 43(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., or that state law should govern for any other reason." We agree with *Colton* and note that while the Eighth Circuit has not yet directly stated its view, its discussion of the question indicates that it will take the same view when and if it is required to resolve the apparent conflict.

When the Eighth Circuit's attention was called to *Baird* in Bouschor v. United States (8th Cir. 1963), 316 F.2d 451, that court found it unnecessary to decide "whether, in connection with an Internal Revenue Service investigation, the privilege is one to be determined under federal law [in accordance with *Falsone, Albert Lindley Lee Memorial Hospital*

and *Colton*] or under Minnesota law [as the court assumed was the holding of *Baird*]." We think it significant, however, that our controlling court expressly noted *Colton's* refusal to follow *Baird*. And we think it even more significant that in Canaday v. United States (8th Cir. 1966), 354 F.2d 849, our controlling court cited and relied upon *Colton* and *Falsone* and did not even mention *Baird* in a case in which the attorney-client privilege was allegedly violated.

Professor Wright, in Section 93 of his Handbook of the Law of Federal Courts (1963), makes clear that cases which deal with privilege present questions of only apparent simplicity. He cited the variety of views which have been expressed by both commentators and courts in regard to various factual situations and noted that "cases can be found which say that the federal courts are bound by all state privileges, or by state statutory privileges only, or that they are not bound by state privileges at all." He then stated that:

It does seem clear that state privileges need not be applied in a non-diversity case where they are broader than the privileges traditionally recognized in federal court. Here the considered decisions are almost all one way, the language of the rule supports the conclusion, and as a matter of policy it seems appropriate that the states should not be permitted to say when the federal courts must refrain from hearing useful testimony in a matter involving federal law. [Id. p. 360]

The cases relied upon to sustain the principle that state privileges need not be applied in non-diversity cases include the cases heretofore cited.

In United States v. Mason (W.D. Mo. 1967), 277 F.Supp. 114, Chief Judge Becker considered the not dissimilar question of whether a state-created privilege must be recognized by the federal court in the trial of a criminal case. He determined that "[I]n a criminal case the rules of evidence, competency, and

privilege of witnesses are determined according to the federal common law."

It seems clear to us that the policy considerations and the desirability of avoiding inconsistent treatment to federal taxpayers command a uniform federal common law rule in regard to Internal Revenue Service investigations authorized by federal law.

Defendants recognize that the physician-patient privilege is solely a creature of statute. 8 Wigmore, Evidence, Section 2380 (McNaughton Rev. 1961), states that only two-thirds of the states have provided for any sort of a physician-patient privilege. Defendants, however, argue that "the physician-patient privilege * * * has behind it the same fundamental policy as does the attorney-client privilege, i.e., the determination that the benefits to be derived from disclosure to the professional man from whom one seeks advice are deemed to be greater than the exclusion of the evidence from the Courtroom." The policy considerations which relate to the two professions are entirely different and reference to Wigmore demonstrates the fallacy of defendants' basic argument.

In 8 Wigmore, Evidence, Section 2285 (McNaughton Rev. 1961), the general principle applicable to all privileged communications was stated as follows:

> Looking back upon the principle of privilege, as an exception to the general liability of every person to give testimony upon all facts inquired of in a court of justice, and keeping in view that preponderance of extrinsic policy which alone can justify the recognition of any such exception (§§ 2192 and 2197 supra), four fundamental conditions are recognized as necessary to the establishment of a privilege against the disclosure of communications:
>
> 1. The communications must originate in a *confidence* that they will not be disclosed.
>
> 2. This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.
>
> 3. The *relation* must be one which in the opinion of the community ought to be sedulously *fostered.*
>
> 4. The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation.
>
> Only if these four conditions are present should a privilege be recognized. [Id. at 527, emphasis Wigmore's.]

Later in that section Wigmore notes that all four conditions are present in regard to communications between attorney and client but that "in the privilege (denied at common law) for communication between physician and patient, the fallacy of recognizing it lies in the incorrect assumption that the second and fourth conditions are generally present."

8 Wigmore, Evidence, Section 2380a contains the detailed discussion supporting the reasons why the physician-patient privilege does not meet the four conditions required for recognition of a privileged communication. In that section it is stated:

> It is certain that the practical employment of the privilege has come to mean little but the suppression of useful truth—truth which ought to be disclosed and would never be suppressed for the sake of any inherent repugnancy in the medical facts involved. Ninety-nine per cent of the litigation in which the privilege is invoked consists of three classes of cases —actions on policies of life insurance where the deceased's misrepresentations of his health are involved, actions for corporal injuries where the extent of the plaintiff's injury is at issue, and testamentary actions where the testator's mental capacity is disputed. In all of these the medical testimony is absolutely needed for the purpose of learning the truth. In none of them is there any reason for the party to conceal the facts, except

as a tactical maneuver in litigation. * * * In none of these cases need there be any fear that the absence of the privilege will subjectively hinder people from consulting physicians freely. The actually injured person would still seek medical aid, the honest insured would still submit to medical examination, and the testator would still summon physicians to his cure.

There is little to be said in favor of the privilege, and a great deal to be said against it. The adoption of it in any other jurisdictions is earnestly to be deprecated. [Id. at p. 831–832].

 The attorney-client privilege has been recognized as a matter of federal common law in many cases. Defendants cite no cases in which the entirely different privilege of physician-patient has ever been recognized, absent a state statute. As noted in Wigmore, the considerations which underlie recognition of the two privileges are entirely different. The considerations which relate to physicians and their patients do not require that an exception should be made to the general liability of all persons to give testimony upon all facts that are the subject of legitimate inquiry in the administration of justice. Congress has not seen fit to recognize a physician-patient privilege in any case. This Court will not create such a privilege as a matter of federal common law in a case which involves the enforcement of a summons in an Internal Revenue investigation of state tax liability.

We are convinced that policy considerations inherent in the Congressional authority granted the Internal Revenue Service to obtain relevant and material information necessary to determine the amount of a federal estate tax override any possible consideration of comity which might suggest that the statutory rule of physician-patient privilege applicable to the trial of a civil action in the state courts of Missouri should be applied in a federal income tax investigation.

For the reasons stated, it is

Ordered that the defendant hospital obey the summons attached to the Government's complaint and each and every requirement thereof at such time and place as may hereafter be fixed by Clarice C. Hahn, Attorney (Estate Tax), or any other proper officer of the Internal Revenue Service.