430 F.2d 1093
 A. L. GARNER et al., Appellants,
v.
Rick WOLFINBARGER et al., Appellees. Ex parte A. L. GARNER et al., Petitioners,
v.
Hon. H. H. GROOMS, U. S. District Judge for the Northern District of Alabama, Rick Wolfinbarger, et al., Respondents.
FIRST AMERICAN LIFE INSURANCE COMPANY, Appellants,
v.
A. L. GARNER et al., Appellees.
 No. 26168.
 No. 26266.
 United States Court of Appeals, Fifth Circuit.
 August 31, 1970.
 Rehearing Denied September 29, 1970.
 
 J. Vernon Patrick, Jr., Howard P. Walthall, and Marvin Cherner, Birmingham, Ala., for appellants-petitioners, A. L. Garner and others; Berkowitz, Lefkovits, Vann & Patrick, Birmingham, Ala., of counsel.
 Robert S. Vance, Birmingham, Ala., for appellant, First American Life Ins. Co.; Jenkins, Cole, Callaway & Vance, Birmingham, Ala., of counsel.
 Wm. T. Gossett, Detroit, Mich., William Bew White, Jr., Birmingham, Ala., John C. Bartlett, Orvel Sebring, Gregory M. Harvey, Philadelphia, Pa., amicus curiae.
 Charles H. Erwin, Mobile, Ala., for appellees Hiram D. Snowden, B. J. Withrow, Rick Wolfinbarger, Merritt Marine, Oscar B. Liddell and Ollie Howell.
 Ronald P. Slepian, Mobile, Ala., for appellees Dr. George Mitchell, Daniel P. Matthews, Bruce W. Skinner and Charles A. Scheuerman; McDermott & Slepian, Mobile, Ala., of counsel.
 C. A. L. Johnstone, Jr., J. Jeptha Hill, William H. Hardie, Jr., Mobile, Ala., for appellee Leon V. McVay, Jr.; Johnstone, Adams, May, Howard & Hill, Mobile, Ala., of counsel.
 Bert S. Nettles, Mobile, Ala., for appellee William R. Marshall; Johnston, Johnston & Nettles, Mobile, Ala., of counsel.
 Champ Lyons, Jr., Herman H. Hamilton, Jr., L. Lister Hill, Montgomery, Ala., for appellees Guy H. Aderholt, William M. Birchfield, Carey P. Buffington, C. T. Fitzpatrick, Dr. David C. Mussleman, Dr. Francis E. Nicholas, John N. Prim, Roy J. Reed, Jr., Ray Wyatt, A. J. Brown, Gale S. Fly; Capell, Howard, Knabe & Cobbs, Montgomery, Ala., of counsel.
 Before JOHN R. BROWN, Chief Judge, GODBOLD, Circuit Judge, and CABOT, District Judge.
 GODBOLD, Circuit Judge:
 
 
 1
 This case presents the important question of the availability to a corporation of the privilege against disclosure of communications between it and its attorney, when access to the communications is sought by stockholders of the corporation in litigation brought by them against the corporation charging the corporation and its officers with acts injurious to their interests as stockholders. Also we are asked to review the correctness of an order of the District Court transferring the case to another district.
 
 
 2
 The District Court in an order reported at 280 F.Supp. 1018 (N.D.Ala.1968), held the privilege was not available as against the stockholders as plaintiffs. Subsequently its ruling has been followed in Dahlke v. Morrison, No. 69-497, N.D.Ala., Oct. 3, 1969; Fischer v. Wolfinbarger, Nos. 5911 and 5919, M.D. Tenn., Aug. 29, 1969; and Fischer v. Wolfinbarger, 45 F.R.D. 510 (W.D.Ky. 1968).[1]
 
 
 3
 Stockholders of First American Life Insurance Company of Alabama (FAL) brought, in the Northern District of Alabama, a class action alleging violations of the Securities Act of 1933,[2] the Securities Exchange Act of 1934,[3] SEC Rule 10(b) (5),[4] the Investment Company Act of 1940,[5] the Alabama Securities Act[6] and common law fraud, seeking to recover the purchase price which they and others similarly situated paid for their stock in FAL. The defendants are FAL and various of its directors, officers and controlling persons. The plaintiffs also claim that FAL was itself damaged by alleged fraud in the purchase and sale of securities, and they assert against various individual defendants a derivative action on behalf of the corporation.
 
 
 4
 FAL filed a cross-claim against all other defendants, asserting in its own behalf the rights the plaintiff shareholders had claimed in the derivative aspect of their complaint.
 
 
 5
 R. Richard Schweitzer served as attorney for the corporation in connection with the issuance of the FAL stock here involved. After the transactions sued upon were complete he became its president. On deposition Schweitzer was asked numerous questions concerning advice given by him to the corporation about various aspects of the issuance and sale of the stock and related matters. Other questions went into the content of discussions at meetings attended by him and company officials and information furnished to him by the corporation. All questions related to times at which Schweitzer acted solely as attorney, before he became an officer of the company and before the filing of suit. Objections were made by counsel for the corporation and by Schweitzer himself that the attorney-client privilege barred his revealing both communications to him by the corporation and the advice which he gave to the corporation.[7]
 
 
 6
 The plaintiffs had served a subpoena duces tecum on Schweitzer to bring various documents to the taking of his deposition. Both he and the corporation claimed the privilege with respect to some of the documents. The District Court treated the subpoena as though it were a motion to produce under Rule 34.
 
 
 7
 The District Judge held that the privilege is not available to the corporation as against these plaintiff stockholders.
 
 
 8
 Contemporaneously the District Judge ordered the case transferred to the Southern District of Alabama under 28 U.S.C. § 1404(a).[8] With respect to both orders he entered appropriate findings pursuant to 28 U.S.C. § 1292(b), the interlocutory appeal statute.[9]
 
 
 9
 This court granted applications to allow both interlocutory appeals — the plaintiffs from the transfer order, docketed as No. 26168, and the defendants from the order denying the claim of privilege, docketed as No. 26266 — but provided that ultimate disposition of the appropriateness of interlocutory appeal would be taken with the case on the merits. Also the plaintiffs filed with this court a petition for a writ of mandamus directing the District Judge to retain jurisdiction of the case in the Northern District. The two interlocutory appeals were consolidated and the petition for mandamus carried with the consolidated case for decision.
 
 
 10
 The court has concluded that the consolidation of the two interlocutory appeals should be vacated. In this opinion we decide No. 26266, the interlocutory appeal of FAL on the privilege issue. No. 26168, the interlocutory appeal on the transfer issue, shall be a separate proceeding, and the petition for writ of mandamus is carried with it for decision. A separate opinion shall be rendered therein by the same panel of the court and a separate judgment and mandate entered.
 
 A. Appealability
 
 11
 The appeal from the order denying the attorney-client privilege to the corporation is proper under § 1292(b). It satisfies each of the three requirements of that subsection. The availability vel non of the privilege of the corporation as against its stockholders is a "controlling question of law" as opposed to a question of fact or matter for the discretion of the trial court. See Continental Grain Co. v. Federal Barge Lines, Inc., 268 F.2d 240 (5th Cir.1959), aff'd sub nom. Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960). As will appear from our discussion, there is "substantial ground for difference of opinion." The appeal "may materially advance the ultimate termination of the litigation." Several individual defendants have invoked their privilege against self-incrimination. The availability or unavailability of the testimony and documents sought may affect the disposition of the pending motions to dismiss. Review under § 1292(b) is available where decision on an issue would affect the scope of the evidence in a complex case, even short of requiring complete dismissal. Atlantic City Electric Co. v. General Electric Co., 207 F.Supp. 613 (S.D.N. Y.), aff'd, 312 F.2d 236 (2d Cir.1962), cert. denied, 373 U.S. 909, 83 S.Ct. 1298, 10 L.Ed.2d 411 (1963) (statute of limitations at issue in a private anti-trust action).
 
 B. Background and choice of law
 
 12
 Turning to the merits, there is no contention by plaintiffs that FAL is outside the ambit of the attorney-client privilege because a corporation is not a client.[10] Their argument is that the privilege is not available to FAL in the circumstances of this case against the demands of the corporate stockholders for access to the communications. The corporation says that its right to assert the privilege is absolute and of special importance where disclosure is sought in a suit brought by the shareholders against the corporation. The American Bar Association appears as amicus curiae and supports the view of an absolute privilege.
 
 
 13
 The privilege does not arise from the position of the corporation as a party but its status as a client. However, in this instance plaintiffs deny the availability to the corporation of the otherwise existent privilege because of the role of the corporation as a party defending against claims of its stockholders.[11]
 
 
 14
 We do not consider the privilege to be so inflexibly absolute as contended by the corporation, nor to be so totally unavailable against the stockholders as thought by the District Court. We conclude that the correct rule is between these two extreme positions.
 
 
 15
 The availability vel non of the privilege involves a complex problem of choice of law. 2B Barron & Holtzoff, Federal Practice & Procedure, § 967 at 241-44 (Wright ed. 1961). The order of the District Court appears to treat Alabama standards as controlling. We conclude that the choice of law cannot be settled by reference to any simple talisman, but can be arrived at only after a consideration of state and federal interests that are inseparable from the factors bearing on the availability of the privilege itself.
 
 
 16
 Our starting point is Rule 43(a), Fed. R.Civ.P.:
 
 
 17
 All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs. * * *
 
 
 18
 Since this is a case of first impression at the court of appeals level, neither the law of Alabama nor federal law offers many guideposts. Alabama has codified its common law attorney-client privilege, Tit. 7, § 438, Code of Ala. (1958 Recomp.), and apparently affords it to corporations, cf. Nationwide Mut. Ins. Co. v. Smith, 280 Ala. 343, 194 So.2d 505 (1966); Melco System v. Receivers of Trans-America Ins. Co., 268 Ala. 152, 105 So.2d 43 (1958), as does federal decisional law. See fn. 10, supra. Alabama follows the exceptions discussed infra for consultations concerning contemplated crimes, Ex parte Enzor, 270 Ala. 254, 117 So.2d 361 (1960), and fraud, Sawyer v. Stanley, 241 Ala. 39, 1 So.2d 21 (1941), and for communications to a joint attorney, as between joint clients, Nationwide Mut. Ins. Co. v. Smith, supra. There is no comprehensive federal body of law surrounding the attorney-client privilege,[12] and no opinion of the circuit courts of appeals discussing the precise issue at hand. There is then no direct conflict between state and federal rules of privilege and nonprivilege in this case.
 
 
 19
 This is a federal question case (with ancillary state aspects) rather than a diversity case. Such actions are predicated on federal law, embodying federal policies. Enforcement of those policies demands that the federal courts apply their own rules of privilege where substantial state interests are not infringed. See Comment, Evidentiary Privileges in the Federal Courts, 52 Calif.L.Rev. 640 (1964), 2B Barron & Holtzoff, Federal Practice & Procedure, § 967 at 243-44 (Wright ed. 1961), cf. 4 Moore, Federal Practice, ¶ 26.23[9] at 1481-85 (1969).
 
 
 20
 Several courts have recognized in the context of administrative investigations into federal income tax liability that these policies require separate federal evaluation of the attorney-client privilege. Colton v. United States, 306 F.2d 633 (2d Cir.1962), In re Albert Lindley Lee Memorial Hospital, 209 F.2d 122 (2d Cir.1953) (physician-patient privilege); Falsone v. United States, 205 F. 2d 734 (5th Cir.), cert. denied, 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953) (accountant-client privilege); United States v. Kansas City Lutheran Home & Hospital Ass'n, 297 F.Supp. 239 (W.D. Mo.1969) (physician-patient privilege); Dorfman v. Rombs, 218 F.Supp. 905 (N.D.Ill.1963) (accounting privilege); United States v. Summe, 208 F.Supp. 925 (E.D.Ky.1962); contra, Baird v. Koerner, 279 F.2d 623 (9th Cir.1960).
 
 
 21
 Our Falsone case and others which rely on it create a separate enclave for tax investigations in that federal courts in enforcing subpoenas,[13] like the investigating agency in issuing them, are not bound by the admissibility standards of Rule 43(a) applicable in trial proceedings. Although in some instances there may be reason to maintain the distinction, United States v. McKay, 372 F.2d 174 (5th Cir.1967), the need for balancing competing interests in disclosure and nondisclosure is as compelling in federal question cases as it is in tax investigations. Rule 43(a) clearly favors disclosure in trial proceedings. Disclosure in a tax investigation is no less potentially destructive of confidential relationships than in other cases. Disclosure in a whole variety of other federal question cases may be no less important in the interest of seeking the truth than in tax investigations. We find nothing in either Rule 43(a) or the Rules of Decision Act to prevent a federal court from independently weighing the competing interests in any federal question case.
 
 
 22
 Many federal courts in nondiversity cases have reached the same result by undertaking to determine the common law of privilege with little or no reference to state law. See, e.g., Natta v. Hogan, 392 F.2d 686 (10th Cir.1968); Radiant Burners, Inc. v. American Gas Ass'n, 320 F.2d 314 (7th Cir.), cert. denied, 375 U.S. 929, 84 S.Ct. 330, 11 L. Ed.2d 262 (1963); United States v. United Shoe Machinery Corp., 89 F. Supp. 357 (D.Mass.1950). Even Baird v. Koerner, supra, which contains language to the effect that federal courts follow state privilege standards in every case, and is often cited for that proposition, looked to decisions from other states and federal courts to reinforce its conclusion that the privilege was available in that case.[14]
 
 
 23
 The Sixth Circuit has held that a state privilege which would have excluded a wife's testimony was not controlling in a federal question case. United States v. Brunner, 200 F.2d 276 at 280 n.2 (6th Cir.1952). In an earlier case, that court took the approach we suggest here. Faced with a privilege embodied in the common law of both the forum state and other states, in circumstances where exceptions to the privilege developed in other jurisdictions would render the evidence admissible, the court chose not to confine itself to the undeveloped law of the state in which the district court sat, but drew upon other authorities which might cast light on the policies behind the privilege. Fraser v. United States, 145 F.2d 139 (6th Cir. 1944), cert. denied, 324 U.S. 849, 65 S. Ct. 684, 89 L.Ed. 1409 (1945).
 
 
 24
 Our conclusion is supported by the thrust of recent Fifth Circuit decisions in diversity cases. Twice we have held "outcome-determinative" state rules of evidence not controlling in diversity cases, relying on the federal interest in promoting orderly trial procedure in the courts of the United States. In Monarch Ins. Co. of Ohio v. Spach, 281 F.2d 401 (5th Cir.1960), a written statement regarding an accident was held admissible under Rule 43(a) despite failure to furnish a copy on request, which in the Florida courts would have rendered the statement inadmissible. We listed as an important factor in our decision
 
 
 25
 the indispensable necessity that a tribunal, if it is to be an independent court administering law, must have the capacity to regulate the manner by which cases are to be tried and facts are to be presented in the search for the truth of the cause.
 
 
 26
 Id. at 407.[15] Accord, Dallas County v. Commercial Union Assurance Co., 286 F.2d 388 (5th Cir.1961).
 
 
 27
 In Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969), this court en banc held that "in diversity cases federal courts apply a federal rather than a state test for the sufficiency of evidence to create a jury question," id. at 368, saying in addition:
 
 
 28
 Federal courts must be able to control the fact-finding processes by which the rights of litigants are determined in order to preserve "the essential character" of the federal judicial system. Of course, we do not contend that this control will not affect state-created substantive rights in some cases. Ultimately, however, the integrity of our fact-finding processes must outweigh considerations of uniformity [citing cases].
 
 
 29
 Id. at 369-370. In federal question cases, there is the additional factor that federal substantive rights may be compromised if a stringent state rule of evidence is applied.
 
 
 30
 This is not to say that state interests play no part. Our discussion below points up that many of the factors to be weighed in the consideration of federal and state interests are predicated on values long embodied in policies of the states rather than federal law.[16] And it goes without saying that a federal court must take full account of the reasons for any asserted privilege including any especially strong policies of the state in which the court sits. But it must take account of federal interests as well.
 
 
 31
 The competing interests in disclosure on the one hand and confidentiality on the other, neither of which lies exclusively within the state or federal realm, are the subject of the next part of our discussion.
 
 C. The availability of the privilege
 
 32
 The privilege must be placed in perspective. The beginning point is the fundamental principle that the public has the right to every man's evidence, and exemptions from the general duty to give testimony that one is capable of giving are distinctly exceptional. 8 Wigmore, Evidence, § 2192 at 70. An exception is justified if — and only if — policy requires it be recognized when measured against the fundamental responsibility of every person to give testimony. Id., § 2285 at 527. Professor Wigmore describes four conditions, the existence of all of which is prerequisite to the establishment of a privilege of any kind against the disclosure of communications:
 
 
 33
 § 2285. General principle of privileged communications. Looking back upon the principle of privilege, as an exception to the general liability of every person to give testimony upon all facts inquired of in a court of justice, and keeping in view that preponderance of extrinsic policy which alone can justify the recognition of any such exception (§§ 2192 and 2197 supra), four fundamental conditions are recognized as necessary to the establishment of a privilege against the disclosure of communications:
 
 
 34
 (1) The communications must originate in a confidence that they will not be disclosed.
 
 
 35
 (2) This element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties.
 
 
 36
 (3) The relation must be one which in the opinion of the community ought to be sedulously fostered.
 
 
 37
 (4) The injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of litigation.
 
 
 38
 Only if these four conditions are present should a privilege be recognized.
 
 
 39
 Id., § 2285 at 527. And he points out that in the case of communications between attorney and client all four conditions are present, with the only condition open to dispute being the fourth. Id., § 2285 at 528.
 
 
 40
 As to this particular type of privileged communication:
 
 
 41
 * * * the privilege remains an exception to the general duty to disclose. Its benefits are all indirect and speculative; its obstruction is plain and concrete. * * * It is worth preserving for the sake of a general policy, but is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits, consistent with the logic of its principle.
 
 
 42
 Id., § 2291 at 554.
 
 
 43
 The policy of the privilege has been plainly grounded since the latter part of the 1700s on subjective considerations. In order to promote freedom of consultation of legal advisers by clients, the apprehension of compelled disclosure by the legal advisers must be removed; hence the law must prohibit such disclosure except on the client's consent. Such is the modern theory.
 
 
 44
 Id., § 2291 at 545.
 
 
 45
 The problem before us concerns Wigmore's fourth condition, a balancing of interests between injury resulting from disclosure and the benefit gained in the correct disposal of litigation. We consider it in a particularized context: where the client asserting the privilege is an entity which in the performance of its functions acts wholly or partly in the interests of others, and those others, or some of them, seek access to the subject matter of the communications.
 
 
 46
 It is urged that disclosure is injurious to both the corporation and the attorney. Corporate management must manage. It has the duty to do so and requires the tools to do so. Part of the managerial task is to seek legal counsel when desirable, and, obviously, management prefers that it confer with counsel without the risk of having the communications revealed at the instance of one or more dissatisfied stockholders. The managerial preference is a rational one, because it is difficult to envision the management of any sizeable corporation pleasing all of its stockholders all of the time, and management desires protection from those who might second-guess or even harass in matters purely of judgment.
 
 
 47
 But in assessing management assertions of injury to the corporation it must be borne in mind that management does not manage for itself and that the beneficiaries of its action are the stockholders. Conceptualistic phrases describing the corporation as an entity separate from its stockholders are not useful tools of analysis. They serve only to obscure the fact that management has duties which run to the benefit ultimately of the stockholders. For example, it is difficult to rationally defend the assertion of the privilege if all, or substantially all, stockholders desire to inquire into the attorney's communications with corporate representatives who have only nominal ownership interests, or even none at all.[17] There may be reasonable differences over the manner of characterizing in legal terminology the duties of management, and over the extent to which corporate management is less of a fiduciary than the common law trustee. There may be many situations in which the corporate entity or its management, or both, have interests adverse to those of some or all stockholders. But when all is said and done management is not managing for itself.
 
 
 48
 The representative and the represented have a mutuality of interest in the representative's freely seeking advice when needed and putting it to use when received. This is not to say that management does not have allowable judgment in putting advice to use. But management judgment must stand on its merits, not behind an ironclad veil of secrecy which under all circumstances preserves it from being questioned by those for whom it is, at least in part, exercised.
 
 
 49
 The District Court relied upon two English cases, Gouraud v. Edison Gower Bell Telephone Co., 57 L.T.Ch. 498, 59 L.T. 813 (1888) and W. Dennis & Sons, Ltd. v. West Norfold Farmers' Manure & Chem. Co., 2 All E.R. 94, 112 L.J.Ch. 239, 169 L.T. 74, 59 TLR 298, 87 Sol.Jo. 211 (1943). Both cases treat the relationship between shareholder and company as analogous to that between beneficiaries and trustees, a basis which the defendants in the present case say has no viability for American corporations. Though not binding precedents, these English cases are persuasive recognition that there are obligations, however characterized, that run from corporation to shareholder and must be given recognition in determining the applicability of the privilege.
 
 
 50
 Apart from the conceptualism that surrounds the management-stockholder relationship, the ABA alternatively contends, implicitly within the framework of Wigmore's fourth condition, that the benefits of disclosure are outweighed by the harm done to both client and attorney. In support of this policy argument, the ABA relies heavily upon In re Prudence Bonds Corp., 76 F.Supp. 643 (E.D.N.Y.1948), which held that a trustee for bondholders in an action for an accounting brought by the bondholders would not be required to produce opinions of counsel rendered to the trustee over a period of eighteen years. That case in turn distinguished the English cases cited above, speculating that the unavailability of the privilege might ultimately harm both attorneys and bondholders.
 
 
 51
 The ABA urges that the privilege is most necessary where the corporation has sought advice about a prospective transaction, where counsel in good faith has stated his opinion that it is not lawful, but the corporation has proceeded in total or partial disregard of counsel's advice. The ABA urges that the cause of justice requires that counsel be free to state his opinion as fully and forth-rightly as possible without fear of later disclosure to persons who might attack the transaction, and that without the cloak of the privilege counsel may be "required by the threat of future discovery to hedge or soften their opinions."
 
 
 52
 The ABA brief does not always distinguish clearly between the separate interests of the corporate client and of the attorney in freedom from disclosure, nor is it possible always to do so. The privilege's exemptions from the broad duty to divulge are designed not only to protect the individual client who may assert the privilege but also to promote free and open communication between clients and attorneys in all matters. All these interests should properly be taken into account in any decision on the privilege. However, we reject the idea that the prospective decision of the client on whether to abide by advice or disregard it, or the guarantee of a veil of secrecy, either establishes or narrows the attorney's obligation in the giving of advice. And to grant to corporate management plenary assurance of secrecy for opinions received is to encourage it to disregard with impunity the advice sought.[18]
 
 
 53
 Two traditional exceptions are also persuasive in negativing any absolute privilege in a corporation in the circumstances of this case. These are the exceptions for communications in contemplation of a crime or fraud, and for communications to a joint attorney.
 
 
 54
 Communications made by a client to his attorney during or before the commission of a crime or fraud for the purpose of being guided or assisted in its commission are not privileged. Union Camp Corp. v. Lewis, 385 F.2d 143 (4th Cir.1967); Pollock v. United States, 202 F.2d 281 (5th Cir.1953); United States v. Bob, 106 F.2d 37 (2d Cir.), cert. denied, 308 U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493 (1939).[19] The stockholders claim to have been the victims of improprieties in the issuance and sale of FAL's stock. The questions, and the documents sought, concerned those alleged improprieties, with particular regard to whether the attorney advised the corporation that proposals it had in mind were not legal and that statements to be put in its prospectus were misleading.
 
 
 55
 The plaintiffs say that some of the matter claimed to be privileged concerned prospective criminal transactions, including issuance by FAL of a misleading prospectus, the circulation of which it is said was a criminal offense under federal securities law, and the granting of options (allegedly as bribes) for securing state registrations of FAL's stock and of its broker-dealer and salesmen. In considering the interplay of interest of management, of stockholders, and of the lawsuit, it must be recognized that management has an obligation to the corporation, to the stockholders and to the public to do what is lawful. But we do not consider unavailability of the privilege to be confined to the narrow ground of prospective criminal transactions. The differences between prospective crime and prospective action of questionable legality, or prospective fraud, are differences of degree, not of principle.[20]
 
 
 56
 A second exception is also instructive. In many situations in which the same attorney acts for two or more parties having a common interest, neither party may exercise the privilege in a subsequent controversy with the other. This is true even where the attorney acts jointly for two or more persons having no formalized business arrangement between them. 8 Wigmore, § 2312 at 603; Grand Trunk W. R.R. v. H. W. Nelson Co., 116 F.2d 823, 835 (6th Cir. 1941). The exception applies to partners, Billias v. Panageotou, 193 Wash. 523, 76 P.2d 987 (1938); makers of mutual wills, Wilson v. Gordon, 73 S.C. 155, 53 S.E. 79 (1905), and joint trustors, Boyle v. Kempkin, 243 Wis. 86, 93, 9 N. W.2d 589 (1943); insured and insurer in an automobile death action, Hoffman v. Labutzke, 233 Wis. 365, 377, 289 N.W. 652, 657 (1940); and many others.
 
 
 57
 In Pattie Lea, Inc. v. District Court, 161 Colo. 493, 423 P.2d 27 (1967) (en banc), a case strikingly similar to this one, the Supreme Court of Colorado held that the statutory privilege for communications between a certified public accountant and his corporate client did not protect the corporation from being required to disclose to its own stockholders in a good faith derivative suit brought by them against the corporation communications from the corporation to the CPA. The Colorado court relied upon the analogy of the joint attorney exception and pointed out that employment of certified public accountants by the corporation was for the benefit of all the stockholders.
 
 
 58
 In summary, we say this. The attorney-client privilege still has viability for the corporate client. The corporation is not barred from asserting it merely because those demanding information enjoy the status of stockholders. But where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.[21]
 
 D. Good cause
 
 59
 There are many indicia that may contribute to a decision of presence or absence of good cause, among them the number of shareholders and the percentage of stock they represent; the bona fides of the shareholders; the nature of the shareholders' claim and whether it is obviously colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; whether the communication related to past or to prospective actions; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons. The court can freely use in camera inspection or oral examination and freely avail itself of protective orders, a familiar device to preserve confidentiality in trade secret and other cases where the impact of revelation may be as great as in revealing a communication with counsel.
 
 
 60
 The order relating to availability of the attorney-client privilege is Vacated. The cause is Remanded for further proceedings not inconsistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Comment, The Attorney-Client Privilege in Shareholders' Suits, 69 Colum.L.Rev. 309 (1969), criticizes the decision below and cases which have followed it
 
 
 [2]
 15 U.S.C. §§ 77a-77aa
 
 
 [3]
 15 U.S.C. §§ 78a-78hh-1
 
 
 [4]
 17 C.F.R. § 240.10b-5
 
 
 [5]
 15 U.S.C. §§ 80a-1-80a-52
 
 
 [6]
 Tit. 53, §§ 28-65, Code of Ala. (1969 Supp.)
 
 
 [7]
 The objection is the client's to invoke, not the attorney's. Since FAL counsel objected we need not inquire into the effectiveness of Schweitzer's objection. The parties make no distinction between the client's communications to the attorney and the attorney's communications to the client, and it is not necessary that we do so. See,e. g., 8 in 1 Pet Products, Inc. v. Swift & Co., 218 F.Supp. 253 (S.D.N.Y.1963); 8 Wigmore, Evidence, § 2320 at 628 (McNaughton rev. 1961).
 
 
 [8]
 "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."
 
 
 [9]
 "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order. * * *"
 
 
 [10]
 Numerous cases sustain the proposition that a corporation is a client for the purpose of invoking the privilegeE. g., United States v. Louisville & N. R.R., 236 U.S. 318, 35 S.Ct. 363, 59 L.Ed. 598 (1915); Schwimmer v. United States, 232 F.2d 855 (8th Cir.), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956); Belanger v. Alton Box Board Co., 180 F.2d 87 (7th Cir. 1950). A decision to the contrary, Radiant Burners, Inc. v. American Gas Ass'n, 207 F.Supp. 771 (N.D.Ill.1962) was reversed by the Seventh Circuit, 320 F.2d 314 (7th Cir.), cert. denied, 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262 (1963).
 
 
 [11]
 The District Court has not ruled on motions to dismiss the derivative claim. But our decision does not turn on whether that claim is in the case or out
 
 
 [12]
 Proposed Rules of Evidence for the United States District Courts and Magistrates, published March 1969, by a committee of the Judicial Conference of the United States, would give federal statutory underpinnings to the privilege, with exceptions forinter alia furtherance of crime or fraud and joint clients. Proposed Rule 5-03. See 46 F.R.D. 161 at 249-251 (1969).
 
 
 [13]
 The courts are empowered to compel testimony or production of relevant documents. 26 U.S.C. §§ 7402(b), 7604(a); Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964). The Federal Rules govern the conduct of the enforcement proceeding. United States v. Powell, 379 U.S. 48 at 58, 85 S.Ct. 248 n. 18, 13 L.Ed.2d 112 at 119 (1964)
 
 
 [14]
 We note the court's language in Baird v. Koerner that the attorney-client privilege "must be assessed on a case to case basis, depending on the particular facts of each case," 279 F.2d at 631, quoting Wigmore for the proposition that the policy of full disclosure must always be taken into account,id. at 631-632.
 
 
 [15]
 Monarch noted the split in authority that application of this rule to privilege questions in diversity cases has produced. Id. at 408-409 n. 15. For example, Massachusetts Mut. Life Ins. Co. v. Brei, 311 F.2d 463, 466 (2d Cir. 1962), points out that rules of privilege have substantive as well as procedural importance. Our decision does not in any way reach the issue of the law controlling privilege questions in diversity cases.
 
 
 [16]
 For example, the responsibility of officers and directors toward the stockholders of a corporation, which is an important factor in our decision
 
 
 [17]
 Due regard must be paid to the interests of nonparty stockholders, which may be affected by impinging on the privilege, sometimes injuriously (though not necessarily so — in some situations shareholders who are not plaintiffs may benefit). The corporation is vulnerable to suit by shareholders whose interests or intention may be inconsistent with those of other shareholders, even others constituting a majority
 
 
 [18]
 We do not consider it determinative whether the attorney consulted is corporated or house counsel, or whether his fees are paid for by the corporation or by management on its own account
 
 
 [19]
 Dictum in at least one famous case states the exception even more broadly, extending it to communications with a lawyer in furtherance of "the purpose of committing a crime or tort." United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358 (D.Mass.1950)
 
 
 [20]
 The crime-fraud exception is particularly instructive because it covers advice concerning prospective action. We recognize the much stronger policy justifications behind the confidentiality of communications with one who is already a wrongdoer and seeks legal advice appropriate to his plight as opposed to one who seeks advice concerning proposed future conduct and, having later acted, seeks to maintain the secrecy. See 8 Wigmore, § 2298 at 573. FAL does not recognize the unavailability of the privilege even as to communications about transactions wholly prospective (except, possibly, where relating to commission of a proposed crime)
 
 
 [21]
 This approach is neither new nor world-shaking. At common law the stockholder has the right to see corporate books and records but it is not unlimited. His demand must be germane to his interest as stockholder, and the interests of the corporation and other shareholders may control to deny inspection. 5 Fletcher, Corporations, § 2218 at 799 (1967). The existent Alabama statute, which follows the Model Business Corporation Act, allows shareholder examination of books and records of account, minutes and record of stockholders, upon written demand and "for any proper purpose." Tit. 10, § 21(46), Code of Ala. (Supp.1969)