**Edward G. GERRITS, an individual, Edgar E. Tolle, an individual, Robert L. Henigar, an individual, David S. Arthurs, an individual, Ervin E. Davis, an individual, and James T. Sanders, an individual, Plaintiffs,**

**v.**

**BRANNEN BANKS OF FLORIDA, INC., a bank holding company, George H. Brannen, II, an individual, and J.S. Brannen, an individual, Defendants.**

Civ. A. No. 91–K–1310.

United States District Court,
D. Colorado.

Aug. 29, 1991.

George Anderson, Orlando, Fla., for plaintiffs.

Gail T. Miller, Denver, Colo., Bradley R. Byrne, Mobile, Ala., for Edward Gerrits.

Russell W. LaPeer, Ocala, Fla., for Brannen Banks.

Frederick J. Baumann, Denver, Colo., for William P. Johnson.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This securities fraud and breach of fiduciary duty action is pending in the U.S. District Court for the Middle District of Florida. The plaintiffs, six minority shareholders of defendant Brannen Banks of Florida, Inc., allege that members of the Brannen family (the directors of the company and holders of 80 percent of its stock) breached their fiduciary duties to minority shareholders by trying to "freeze them out" for their own benefit, and that the corporation committed securities fraud in the process. William P. Johnson is the Denver attorney who represented defendant Brannen Banks of Florida, Inc. during the time periods at issue in the complaint.[1] The plaintiffs allege that Johnson "has provided corporate and regulatory advice to Brannen Banks since its formation ... directed, *inter alia*, to estate planning for the Brannens and their family." Brief in Support of Motion to Compel at 3.

On August 2, 1991, the plaintiffs filed a Rule 37(a)(1) motion to compel Johnson to answer fifteen questions asked during his deposition conducted on January 8, 1991. Johnson refused to answer the questions, asserting the attorney-client privilege, work product privilege, or both. These questions concerned (1) Alex Sheshunoff and Company, the investment banking firm which had prepared an evaluation of Brannen Bank's shares for use in a merger proposed in 1990 which would have "cashed out" minority shareholders at a price based on the evaluation, (2) Brannen Bank's dividend policy, (3) a 1989 tender offer by which Brannen Banks sought to redeem minority shares, (4) Brannen Banks' withdrawal of its merger application filed with the Federal Reserve, and (5) recent offers to acquire the banks. The plaintiffs contend that neither privilege is applicable to the questions, and Johnson should be required to answer them.

█ A motion to compel a *party* to provide discovery under Fed.R.Civ.P. 37(a)(1) may be brought in the district in which the action is filed or in the district in which the deposition is being taken. If the motion is filed in the district in which the deposition

---

**1.** Johnson does not represent Brannen Banks in this litigation.

is being taken, the court has discretion to transfer the matter to the district in which the action is pending. *See* Fed.R.Civ.P. 37(a)(1) advisory committee note. However, a motion to compel a *non-party* to provide discovery must be made in the district where the deposition is being taken. Since Johnson is a non-party, the plaintiffs' motion must be heard in this court, not in the Middle District of Florida, and I do not have discretion to transfer it there. *See First Nat'l Bank at Thermopolis v. Western Casualty & Sur. Co.*, 598 F.2d 1203 (10th Cir.1979); *American Motorists Ins. Co. v. General Host Corp.*, 120 F.R.D. 129, 134 (D.Kan.1988).

### I. *Work Product Privilege.*

■ Johnson has asserted the work product privilege with respect to seven of the fifteen questions he refused to answer (Nos. 1, 2, 3, 5, 6, 8, and 13).[2] The plaintiffs contend that the work product privilege is inapplicable to these questions. I agree. First, the work product privilege applies only to "documents and tangible things." Fed.R.Civ.P. 26(b)(3); 8 C. Wright & A. Miller, *Federal Practice & Procedure* § 2024 at 196 (1970). At least with respect to questions not involving Johnson's bills (Nos. 1, 5, 6, 8 and 13), it is clear none related to the production of documents or tangible things. As to the other questions (Nos. 2, 3, and 4), Johnson was not asked to produce the bills or letters referred to; the questions related to the substance of the conversations or letters which generated the bills. Work product immunity does not protect the discovery of facts a party may have learned from documents that are not themselves discoverable. 8 C. Wright & A. Miller, *supra*, at 197.

■ Brannen Banks argues, however, that the work product privilege is not nec-

essarily limited to documents and tangible things. Assuming this to be true, there is a second definitional obstacle to Johnson's assertion of work product privilege. This doctrine does not apply to "documents prepared in the regular course of business rather than for purposes of litigation." *Id.; see also* Fed.R.Civ.P. 26(b)(3) advisory committee note. There is no indication that any of the above questions related to information Johnson prepared in anticipation of litigation and that disclosure would reveal his mental impressions or thought processes relating to trial. *See Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); Fed.R.Civ.P. 26(b)(3). Johnson was Brannen Banks' counsel as to business matters and not as to litigation matters. Accordingly, work product immunity does not provide a defense to the plaintiffs' motion to compel.

At oral argument, Brannen Banks urged that Johnson's work included the consideration of possible litigation being initiated by minority stockholders to obtain a fair valuation of their stock by a court pursuant to a Florida state statute. Such, of course, is the kind of prudent advice which counsel are expected to give in business matters. Dare I say that competent lawyers are expected to give such advice in order to keep their clients out of litigation? I do not believe such salutary advice falls within the ambit of the privilege.

### II. *Attorney–Client Privilege.*

■ Johnson asserted the attorney-client privilege as to twelve of the fifteen questions he refused to answer (Nos. 1, 2, 3, 4, 7, 9, 10, 11, 12, 13, 14, and 15). This privilege relates only to confidential communications between attorney and client. 8 C. Wright & A. Miller, *supra* § 2017 at

---

**2.** Johnson generally asserted "the privilege" or that his response "would be privileged" as to five questions (Nos. 4, 7, 9, 10, and 11). The failure to specify work product as the particular privilege asserted waives work product immunity as to those discovery requests. *See, e.g., Eureka Fin. Corp. v. Hartford Accident & Indemnity Co.*, 136 F.R.D. 179, 183–85 (E.D.Cal.1991); *cf. Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l*, 130 F.R.D. 28, 32 (S.D.N.Y.1990)

(local rule). Therefore, I have not addressed the applicability of the work product privilege with respect to these questions. In addition, I think that a reasonable interpretation of Johnson's deposition testimony is that he used the term "work product" when intending to invoke this qualified privilege, and used either the term "the privilege" or "the attorney/client" privilege when intending to invoke the broader attorney-client privilege.

132. The privilege does not extend to information obtained by an attorney from third persons. *Id.* at 137.

 Of the above questions, several relate only to Johnson's communications with members of Alex Sheshunoff and Company, the Austin, Texas investment banking firm hired in 1990 to undertake a valuation of Brannen Banks' stock (Nos. 1, 2, 3, and part of 4). Johnson is not entitled to assert the attorney-client privilege as to these questions because they did not involve communications with his client, Brannen Banks. Although the attorney-client privilege may sometimes extend to communications to accountants or other experts providing assistance to an attorney, the communication must be made in confidence for the purpose of obtaining legal advice from the lawyer. If what is sought is not legal advice but only professional service, or if the advice sought is the professional's rather than the lawyer's, no privilege exists. *See United States v. Brown*, 478 F.2d 1038 (7th Cir.1973); *United States v. Bonnell*, 483 F.Supp. 1070, 1076–77 (D.Minn.1979). The defendants have made no showing that Johnson's conversations with Sheshunoff involved anything more than instructions to Sheshunoff regarding the valuation of the stock. Therefore, Johnson should be required to answer the questions relating to his conversation with members of the Sheshunoff firm.

With respect to the remainder of the questions to which the attorney-client privilege was asserted (Nos. 7, 9, 10, 11, 12, 13, 14, 15 and part of question 4), the plaintiffs raise two arguments why Johnson's responses would not be privileged. First, they contend that the privilege has been waived because Brannen Banks has voluntarily produced documents containing the same information as that requested from Johnson in these questions. I disagree.

The information provided (*See* Attachment B to the motion to compel) is a cover letter from George Brannen to Thomas Mecredy of Sheshunoff attaching a "Fair Market Value Information Request form." In the form, Brannen Banks identified the purpose of the evaluation to be "merger relative to cashing out minority shareholders and estate planning." The plaintiffs also rely on a letter and 1989 tender offer indicating that the offer to redeem was at least in part for the Brannen's estate planning purposes. The plaintiffs appear to contend that, as result of these disclosures, any questions to Johnson about the merger, valuation and tender offer are fair game.

 The above information in no way discloses confidential attorney-client conversations between Johnson and the management of Brannen Banks; it relates only to the company's purpose in obtaining the stock valuation from Sheshunoff and attempting the 1989 tender offer. It is insufficient as a general waiver of privilege as to Johnson's communications with his client about the merger, tender offer or other legal advice attendant thereto.

The plaintiffs additionally argue that the attorney-client privilege is inapplicable because, as minority shareholders of Brannen Banks, they have a right to the same privileged information. Both parties agree that this issue is governed by *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir.1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971), and reiterated in *Ward v. Succession of Richard W. Freeman*, 854 F.2d 780 (5th Cir.1988), cert. denied, 490 U.S. 1065, 109 S.Ct. 2064, 104 L.Ed.2d 629 (1989). In these cases, the Fifth Circuit held that "in litigation involving a corporation and its shareholders, the shareholders may have access to otherwise privileged information after a showing of good cause," because "shareholders stand in the shoes of a client when management seeks counsel on matters that ultimately should benefit shareholder interests." *Ward*, 854 F.2d at 784, 785. Thus,

"where the corporation is in suit against its stockholders or charged with acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of stockholders to

show cause why it should not be invoked in the particular instance."

*Id.* (citing *Garner*, 430 F.2d at 1103–04).

*Garner* and *Ward* identify the following non-exclusive factors for determining whether good cause exists to waive the privilege in favor of shareholders:

"[T]he number of shareholders and the percentage of stock they represent; the bona fides of the shareholders; the nature of the shareholders' claim and whether it is obviously colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; whether, if the shareholders' claim is of wrongful action by the corporation, it is action criminal, or illegal but not criminal, or of doubtful legality; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has in interest for independent reasons."

*Id.* at 784 (citing *Garner*, 430 F.2d at 1104).[3] In addition, the court in *Ward* noted that good cause should be more difficult to demonstrate in a non-derivative shareholder action. The court explained:

Where shareholders bring a successful derivative action on behalf of the corporation, they benefit *all* shareholders. Where, however, shareholders seek to recover damages from the corporation for themselves, the motivations behind the suit are more suspect, and thus more subject to careful scrutiny, in determining if good cause for suspending the privilege exists.

*Id.* at 786. The Ninth Circuit has taken the above analysis one step further in holding that the *Garner* and *Ward* exception is not applicable in non-derivative stockholder suits. *See Weil v. Inv./Indicators Research & Management*, 647 F.2d 18 (9th Cir.1981).

In this case, whether the plaintiffs have shown good cause for suspending the privilege is a close question. First, this is a mixed action in which some of the claims are derivative and others are individual. The plaintiffs' derivative claims are for breach of fiduciary duty, and they seek derivative relief in the form of an accounting, the return of improperly transferred monies, a valuation of stock, the payment of a fair dividend, other injunctive relief, and attorney fees and costs. *See* Complaint ¶ I, IX. Nevertheless, they individually request damages not less than $1,000,-000 for securities fraud violations. *See id.* ¶ IX. On balance, however, this is not a situation like *Ward* in which the sole purpose of the lawsuit is to benefit the individual plaintiffs. With the exception of the securities fraud claims (which are dependent on the success of the derivative fiduciary duty claims), the plaintiffs are attempting to benefit other minority stockholders. Thus, the increased scrutiny mandated by *Ward* for non-derivative actions does not fully apply.

Looking at the other *Garner* and *Ward* factors, the plaintiffs currently hold only six percent of Brannen Banks' stock, but this represents 25 percent of non-family, minority shareholders' stock. There is no evidence of bad faith, and the plaintiffs have at least a colorable claim for breach of fiduciary duty (the basis for their derivative claim), in that there is objective evidence that Brannen Banks' actions appear to have been driven by the Brannen family's individual tax planning concerns, based on the advice of counsel. This is expressly indicated in some of the documents relating to the tender offer which are attached to the complaint. Thus, the plaintiffs are not going on a fishing expedition; there is evidence that Johnson did counsel the company in a manner which might be considered detrimental to minority interests. They apparently have tried to gain similar information from other sources, but motions attempting to block that discovery have also

---

**3.** These factors have been applied by courts in the Tenth Circuit addressing similar discovery disputes. *See Aguinaga v. John Morrell & Co.,* 112 F.R.D. 671 (D.Kan.1986); *cf. In re Diasonics Secs. Litigation,* 110 F.R.D. 570, 574 (D.Colo. 1986).

been lodged. The communications they seek related to past actions and were not related to any ongoing litigation, and no trade or corporate secrets were involved.

I am not prepared at this juncture, however, to apply the *Garner* and *Ward* exception to cases in which both derivative and non-derivative claims are presented in the absence of a stronger showing of breach of fiduciary duty or securities fraud. It is simply not enough to say that Johnson's advice to the company might have been detrimental to minority interests nor that action by Brannen Banks to benefit individual members of the Brannen family is *ipso facto* a securities fraud or breach of fiduciary duty. The balance must be struck in favor of existing, cognizable privileges. To rule the contrary would, in my view, encourage the filing of derivative claims solely or largely to skirt the privileges.

I hasten to point out for the benefit of anyone reviewing this memorandum opinion that I am applying the law as I find it to exist and not as I think it should be. If such were the case I would begin by explaining why I think both privileges should be abolished.

IT IS ORDERED THAT the work product privilege is inapplicable to questions 1, 5, 6, 8, and 13; and, as presently asked, not invocable to questions 2, 3, and 4; and

IT IS FURTHER ORDERED THAT the attorney-client privilege does not extend to conversations between Johnson and Alex Sheshunoff and Company; and

IT IS FURTHER ORDERED that the attorney-client privilege *vis-a-vis* Johnson has not been waived by Brannen Banks; and

IT IS FURTHER ORDERED that the *Garner* and *Ward* exception permitting access to privileged corporation information will not be applied on the basis of the facts and allegations presented here; and

IT IS FURTHER ORDERED that the deposition of Johnson together with the submission of documents and records previously identified shall take place in accordance with the agreement of counsel. In the absence of such agreement the deposi-

tion will take place at a time set by me in my courtroom, under my supervision with costs to be assessed against either or both parties as I deem appropriate following completion of the deposition.