In re GENERAL INSTRUMENT CORP.
SECURITIES LITIGATION.

No. 96 C 1129.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 7, 2000.

Steven L. Bashwiner, Dawn M. Canty, Katten, Muchin & Zavis, Chicago, IL, for defendant.

Ronald L. Futterman, Michael I. Behn, Futterman & Howard, Chicago, IL, for plaintiffs.

### *MEMORANDUM ORDER*

BOBRICK, United States Magistrate Judge.

Before the court is the motion of plaintiffs for an order compelling the production of certain documents identified on defendant's third revised privileged log.

## I. BACKGROUND

This matter has been pending in this court for nearly four years, since February of 1996. It began on Judge Marovich's docket, and Magistrate Judge Rosemond was assigned discovery matters. On August 4, 1999, the executive committee reassigned the proceeding to Judge Leinenweber and directed the clerk of the court to assign a different magistrate judge by lot. In view of the time Magistrate Judge Rosemond had spent on the various discovery disputes the parties have had, the defendants moved for a reconsideration of the executive committee's order for a reassignment of magistrate judges. The committee denied the motion, and on November 23, 1999, the instant discovery dispute was assigned to this magistrate judge. Consequently, with a great deal of water under the bridge, we are constrained to go back to the beginning to get a sense of this case.

We draw our understanding of this matter from orders entered by Judge Marovich. This matter appears to encompass three consolidated actions, a class complaint, and two derivative suits. The Class Complaint alleges securities fraud on behalf of all persons who purchased or otherwise acquired the common stock of defendant GI during the period from March 21, 1995 through October 18, 1995. Plaintiffs contend that GI, certain of its officers and directors and Forstmann Little & Co., GI's largest shareholder, made false representations to the investing public about the development and success of two new telecommunications products GI manufactured. Plaintiffs maintain that these representations misled the market and artificially inflated the price of GI stock during the Class Period, thus allowing defendants, among other things: (1) to ensure the success of a secondary public offering by Forstmann Little; (2) to complete successfully the acquisition of Next Level Communications using GI common stock as consideration; (3) to conceal damaging financial information from the investing public; and (4) to sell shares of GI stock that they personally owned at artificially inflated prices. Plaintiffs assert that when the truth about the problems affecting GI's new products became known, the closing price of GI stock fell dramatically to its lowest price in two years.

In addition to the Class Complaint, the sharp decrease in the price of GI stock also precipitated two derivative lawsuits arising out of the same course of events. One lawsuit was brought by Plaintiff Seymour Lazar ("Lazar"), a GI shareholder, as a derivative action against GI and certain members of its board of directors alleging that they breached their fiduciary duty to the Company. A second derivative action was brought on behalf of a group of Next Level Communications' former shareholders against Next Level, currently a wholly-owned subsidiary of GI. This Complaint alleges that GI made false and misleading statements during the pendency of a merger agreement with Next Level which resulted in GI obtaining the plaintiffs' Next Level stock—pursuant to a stock swap—based on an artificially inflated value of GI's stock.

Now, we turn to the discovery dispute, which, according to correspondence in the record has been going on for a little more than three years. It would appear that defendant GI first produced a privilege log in November of 1996, added documents in December of that year, and produced a revised log in February of 1997. Plaintiffs requested a computer disk of the log in May of 1998, which defendant provided a month later. In December of 1998, plaintiffs issued challenges as to defendant's claims of privilege for 899 of 925 documents. In response, defendant produced 33 documents in February of 1999. Many of these, however, were ap-

parently merely cover sheets, which plaintiffs pointed out to defendant. Plaintiffs also asked that defendants identify 125 individuals named in the document descriptions. In response, defendants essentially stated that "anyone with even a passing familiarity with this case" would know the identities. Plaintiffs then brought their motion to compel. On April 1, 1999, defendants produced an additional 20 documents. Presently, plaintiffs seek production of 396 documents.

## II. ANALYSIS

■ The party seeking to withhold materials from discovery bears the burden of establishing the essential elements to demonstrate the materials are privileged. *United States v. Evans,* 113 F.3d 1457, 1461 (7th Cir.1997). The elements have been summarized as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected from disclosure by himself or by the legal adviser, (7) except the protection may be waived.

*Id.* (*quoting* 8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (John T. McNaughton rev.1961)). Furthermore, the privilege must be established on a document-by-document basis; a blanket claim failing to specify what information is protected will not suffice. *United States v. White,* 970 F.2d 328, 334 (7th Cir.1992).

■ It is important to remember that, because the privilege impairs the court's search for the truth, it is narrowly construed. *Evans,* 113 F.3d at 1461. Not all information transmitted to an attorney becomes cloaked with the privilege. *White,* 970 F.2d at 334. For example, when information is transmitted to an attorney with the intent that it be transmitted to a third party, the material is not privileged. *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983).

■ Beyond that, plaintiffs in this case raise a specific exception to the attorney-client privilege, the fiduciary duty exception, which we address at the outset. In the leading case on this exception, the court in *Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir.1970) held that:

> where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and those of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.

430 F.2d at 1103–04. While the Seventh Circuit has not addressed this matter, the courts of this district have followed *Garner* in several instances. *See, e.g. J.H. Chapman Group, Ltd. v. Chapman,* 1996 WL 238863 (N.D.Ill.1996); *Heyman v. Beatrice Company, Inc.,* 1992 WL 245682 (N.D.Ill.1992); *Hashim v. First Nat'l Bank of* Chicago, 1987 WL 6563 (N.D.Ill.1987); *Ferguson v. Lurie,* 139 F.R.D. 362 (N.D.Ill.1991); *Bailey v. Meister Brau, Inc.,* 55 F.R.D. 211 (N.D.Ill. 1972). The issue is generally whether the party seeking discovery can demonstrate good cause for overcoming the attorney-client privilege. *Chapman,* 1996 WL 238863, *1. Good cause embraces considerations such as whether the party has a colorable claim, whether the information sought is not available elsewhere, whether the information is related to past or present actions, and whether production of the information may risk the revelation of trade secrets or other confidential business information. *Id.* These considerations, however, are neither prerequisite nor dispositive: they "may contribute" to a finding of good cause. *Garner,* 430 F.2d at 1104.

■ Here, it must be said that plaintiffs' derivative action is at least a colorable claim; it has withstood a motion to dismiss. It would appear from the record that information is related to past actions that are the subject of the lawsuit. Defendants have not indicated that trade secrets are at risk, and there is a protective order at work in this case. Accordingly, we see no reason why the exception should not apply. Review of defendant's arguments against it, in fact, convince us all the more.

Defendant's arguments against application of the fiduciary exception are mostly disingenuous and raise concerns about whether they are asserting the attorney-client privilege in good faith. For example, defendant's main argument against the exception is that it has not been applied by the Seventh Circuit. (*GIC's Memorandum in Opposition* ("*Mem. Opp.*"), at 5–7). It is true, as we have stated, that only district court cases in this jurisdiction have applied the exception. But it is ironic that a party like the defendant, demanding appellate court sanctification before the exception is applied yet again can only cite *district court* cases, from outside this jurisdiction, against the application of the exception. (*Mem. Opp.* at 5 (*citing Lefkowitz v. Duquesne Light Co.*, 1988 WL 169273 (W.D.Pa.1988)); *Shirvani v. Capital Investing Corp.*, 112 F.R.D. 389 (D.Conn. 1986).

Defendant also argues that plaintiff must prove each and every one of the indicia *Garner* listed as relevant to good cause. (*Mem. Opp., at 9*). As already noted, this is not the case. We find it curious that defendants would hold plaintiffs to such scrutiny when they themselves have refused to be even marginally specific in their privilege log. There, the defendants hope to establish the attorney client privilege based on document descriptions such as: "Explanation re: Primestar Relationship" (Doc. 4); "NLC Employee Stock Options" (Doc. 8); "Report Re: NLC" (Doc. 21); "Filing with SEC" (Docs. 31–37). As already noted, defendant has refused to describe the specific capacities of many of the authors and recipients list in its privilege log, resting on notations such as: "Distribution" (Docs. 15, 45, 71); or names without capacities (Docs. 5, 47, 48, 60, 82, 84, 86, 90, 93, 94, *etc.*). Better still, and most illustrative of persuasiveness—or lack thereof—of defendant's claims of privilege, are documents such as numbers 789 and 826, where recipients are listed as "Marty" and "Carol." Perhaps, as defendants say, these are persons identifiable to anyone with a "passing familiarity" with this case, but they are not identifiable to the court, certainly not on a first-name basis.

As noted above, plaintiffs' claims have withstood a motion to dismiss. In this regard, defendants quote *Garner* as finding such a circumstance as non-dispositive. (*Mem. Opp., at 9*). In fact, *Garner* noted that its decision did not turn on whether the derivative claim was dismissed. 430 F.2d at 1097 n. 11. Obviously, the fact that the court refused to dismiss such a claim can only bolster the application of the fiduciary exception.

In conclusion, we are convinced on the record before us that the fiduciary exception should apply in this case. Defendants should therefore produce those documents plaintiffs seek. Even if this were not the case, however, we would be inclined to grant plaintiff's motion. As noted above, defendant's privilege log is sketchy at best. It falls far short of the requirements to which this magistrate judge hold privilege logs, *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 145 F.R.D. 84 (N.D.Ill.1992), and fails to meet Fed.R.Civ.P. 26(b)(5)'s general admonition that documents must be described to "enable other parties to assess the applicability of the privilege." If we do not know the capacities of the persons producing documents or in their chain of distribution, it is impossible to assess a claim of privilege. Cryptic descriptions of subject matter are also of no help. We can select, almost at random, any entry in the log and be unable to determine how it meets the elements of attorney-client privilege.

Document 626, for example, was authored by a non-attorney and sent to a non-attorney. While a copy of the document was distributed to two attorneys, its target was clearly a non-attorney and, in any event, a document prepared for both legal and non-legal review is not privileged. *In re Air Crash Disaster at Sioux City, Iowa*, 133 F.R.D. 515, 519 (N.D.Ill.1990).[1] Further, it is described in a manner that does not allow the court an inkling as to its subject matter, let alone an opportunity to evaluate its privileged status:

---

1. Examples of such documents are numerous: 2, 3, 8, 15, 17, 29, 60, 82, 83, 84, 93, 95, 106, 108, 109, 114, 180, 214, 598, 696, 851, 889, 895. Even if we did not find the fiduciary exception applicable in this case, defendant would nevertheless be constrained to produce all such documents.

"TV Abril DTH status update." Much more explanation of such a document is required, even if it were produced for an *in camera* inspection.[2]

Document 707 is authored, not by an attorney, but by a "GIC officer" and distributed to other non-attorneys, including one individual whose capacity is not described. The subject matter of the document is said to deal with a response to a "schedule slip up." There is absolutely no indication that legal advice is being sought, or revealed.

Beyond that, there are 197 documents listed in the privilege log for which defendants fail to describe capacity for authors and/or recipients: 5, 8, 15, 28, 29, 45, 47, 48, 52, 60, 61, 71, 82, 83, 84, 85, 86, 90, 92, 93, 94, 95, 96, 108, 111, 112, 114, 134, 135, 137 138, 140, 142, 144, 146, 169, 172, 173, 180, 181, 182, 189, 192, 194, 195, 196, 198, 199, 205, 206, 207, 210, 214, 219, 220, 221, 222, 227, 228, 229, 252, 256, 258, 261, 262, 264, 265, 266, 268, 271, 272, 273, 274, 277, 278, 298, 299, 300, 301, 303, 304, 305, 314, 317, 331, 350, 351, 352, 355, 356 357, 358, 365, 431, 432, 445, 447, 449, 451, 452, 454, 480, 484, 485, 486, 488, 490, 492, 493, 496, 498, 508, 510, 532, 544, 545, 549, 550, 553, 554, 555, 559, 579, 582, 592, 593, 594, 610, 611, 617, 621, 622, 626, 629, 631, 635, 636, 650, 651, 653, 654, 652, 664, 665, 666, 668, 674, 675, 686, 690, 706, 707, 724, 748, 753, 755, 756, 765, 767, 779, 782, 785, 787, 788, 789, 790, 792, 795, 796, 798, 804, 811, 812, 813, 815, 817, 822, 826, 830, 832, 847, 852, 853, 855, 858, 863, 871, 872, 873, 875, 878, 881, 884, 885, 887, 888, 891. The failure to provide specific and complete distribution lists with descriptions of individuals' capacities for documents is sufficient reason to order production. *Sioux City,* 133 F.R.D. at 522. Without such information, the court can neither assess whether the documents were prepared for the purpose of legal advice or whether they were intended to be confidential. These documents would all have to be produced for discovery regardless of the application of the fiduciary exception.

There are a substantial number of documents where defendant's description of subject matter does not allow us to conclude they were produced with legal advice in mind. These include documents relating to shipping schedules and other business concerns: 2, 11, 12, 39, 44, 167, 187, 204, 208, 388, 283, 420, 423, 435, 437, 538, 557, 600, 603, 630, 677, 680, 697, 698, 833, 851, 887. To be privileged, the documents must not only exhibit attorney involvement, but must involve "a legal adviser acting in his capacity as such." *Evans,* 113 F.3d at 1461. Similarly, there are a number of documents where defendant's descriptions suggest they reflect engineering or equipment concerns, as opposed to legal advice: 70, 110, 260, 306, 313, 328, 348, 441, 455, 456, 471, 538, 677, 679, 734, 746, 833. Defendant has failed to show any of these documents are privileged.

Many documents are described as the handwritten notes of an attorney which apparently were not distributed. These include documents 74, 79, 123, 230, 308, 309, 310, 315, 316, 319, 324, 325, 332, 333, 334, 372, 377, 380, 396–399, 401, 402, 414, 437, 438, 441, 443, 561, 590, 699, 701, 709–721, 731, 734, 739, 847. Document 53 is merely the handwritten notes of a GI officer. Obviously, defendant has failed to show that these documents involve communications made in confidence by a client. *Evans,* 113 F.3d at 1461. These, too, must be produced.

Other documents have distribution lists so vast, or that clearly involve outside third parties, that there can be no valid claim of confidentiality. Such documents are: 29, 31–37, 217, 288, 464, 630, 640, 643, 688, 722, 740, 775, 879. Again, as there is no valid claim of privilege for these documents, they must be available for discovery.

Finally, we return to the sketchy, cryptic, often mysterious descriptions of subject matter throughout defendant's privilege log. Document 20, for example, is described as "Report re: NLC." There is also document 19, which is described as "Relationship between NLC and DSC." Nowhere in the log does defendant explain what NLC or DSC are; even if it did, such a description does

---

**2.** The 396 documents were provided to the court on December 29, 1999 for an *in camera* inspection. In view of our holding, and as more fully discussed below, such inspection is deemed un-necessary as well as unwarranted. The documents will be returned to defendant upon issuance of this order.

not even approach the specificity required to establish that the documents are privileged. Indeed, this magistrate judge does not even accept such descriptions in privilege logs filed in this court. *Allendale*, 145 F.R.D. at 88. Further such examples include: "TV Abril DTH status" (Doc. 626); "Teleconference with Tracey, Matt, Felix Seeley Broin re Forstman Little Management" (Doc. 731); "CCTV Update" (Doc. 736); "Key issues-D.Dill" (Doc. 794); "BA Contract Comments" (Docs. 805, 807); "Remote for Optus" (Doc. 863); "re: attached" (Doc. 865); "GI Australia-housekeeping" (Doc. 868). Other descriptions, however sketchy, demonstrate that the subject matter does not concern legal advice. Some examples of these documents are: "CCTA–Technical issues" (Doc. 746); and letters described as requesting copies of documents (Docs. 671–672). All such documents—4, 10, 19, 20,21, 255, 260, 626, 670,-671, 672, 699, 731, 736, 739, 740, 771, 805, 807, 808, 818, 819, 820, 821, 827, 863, 865, 868, 869, 870, 881, 884, 886, 889, 895, 902–919—should be available to plaintiffs.

### III.   CONCLUSION

The plaintiffs in this case have argued convincingly for the application of the fiduciary exception announced in *Garner v. Wolfinbarger* and followed by various judges in this district. The defendant's arguments against this application ring hollow. Those arguments are also undermined by defendant's privilege log, which does nothing to advance defendant's burden of establishing the attorney-client privilege as to each separate document it hopes to withhold from discovery. This, despite the fact that it has been a work in progress for about three years, and defendant has had ample opportunity to revise it.

Case law, and Fed.R.Civ.P. 26(b)(5) should have made it clear to defendant, at some point over the last three years, that its privilege log was woefully deficient. When the plaintiff pointed out obvious flaws in the log, however, the defendant stridently refused to provide required information. It is apparent from review of the privilege log that defendants are under the mistaken impression either that plaintiffs must prove documents are not privileged, or that it is the court's burden

to establish the applicability of the privilege as to defendant's documents. This is all the more clear now that defendant, in the eleventh hour, asks for an *in camera* inspection of the documents. Defendants have had all the opportunity afforded by the last three years to support their claims of attorney-client privilege. Even if we were to reject the application of the fiduciary exception to the attorney-client privilege, upon a close and studied review of the materials submitted by defendant, which includes defendant's privileged log, we would not grant an *in camera* inspection in this case. Defendant has had ample opportunity to carry its burden as to establishing the privilege and has failed. Fed.R.Civ.P. 26(b)(5); *see, e.g. ConAgra, Inc. v. Arkwright Mut. Ins. Co.*, 32 F.Supp.2d 1015 (N.D.Ill.1999); *Brand Name Prescription Drugs Antitrust Litigation*, 1995 WL 663684 (N.D.Ill.1995); *Ziemack v. Centel Corp.*, 1995 WL 314526 (N.D.Ill.1995).

Accordingly, the plaintiff's motion to compel production is GRANTED. Defendant is to provide plaintiff with subject documents within three working days of this order.