COURT OF CHANCERY
OF THE
STATE OF DELAWARE

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: November 1, 2017
Date Decided: January 10, 2018

R. Bruce McNew, Esquire
Cooch & Taylor, P.A.
1000 West Street, 10th Floor
Wilmington, DE 19801

David A. Dorey, Esquire
Blank Rome LLP
1201 North Market Street, Suite 800
Wilmington, DE 19801

Re: *Buttonwood Tree Value Partners, L.P., et al. v. R.L. Polk & Co., Inc., et al.*, Civil Action No. 9250-VCG

Dear Counsel:

It bears repeating what this Court has stated before: that Delaware Rule of Evidence 502(b)—codifying the attorney-client privilege—stands in contrast to the bulk of the Rules of Evidence. The latter are largely designed to promote the search for truth with respect to the matter litigated. Rule 502, by contrast, protects attorney-client privilege in a way that is, in a narrow sense, inimical to that goal. In a broader sense, of course, the rule promotes justice by allowing free communication between client and counsel, a right which the Rules (and common sense) hold superior, in most instances, to the incremental advantage in the search for truth to be gained from invading the privilege.

Here, the Plaintiffs move for an order to compel production despite the privilege. There are situations where the search for truth or other meritorious

interests are so compromised by maintenance of the attorney-client privilege that justice requires that the privilege yield. Strait is the gate and narrow the road to an order vitiating the privilege, however. The Plaintiffs rely on the so-called *Garner*[1] and crime-fraud exceptions to the application of the privilege; for the reasons below, I deny the Motion to Compel to the extent that it relies on those exceptions.

## I. BACKGROUND

In this matter, Plaintiffs Buttonwood Tree Value Partners, L.P. and Mitchell Partners L.P. allege that they received inadequate consideration from R.L. Polk & Co. Inc. for stock they sold to Polk as part of a 2011 self-tender.[2] According to the Plaintiffs, about two years after these transactions, members of the Polk family, which collectively held over ninety percent of Polk's common stock, sold the company at a premium representing three times the self-tender price. Between the self-tender and the sale, moreover, Polk stockholders received dividends amounting to over one-third of the self-tender price. And, in describing the self-tender to its stockholders, Polk allegedly failed to disclose several material facts, including that the Polk family had been considering a sale of the company for some time. The crux of the Complaint is that the Polk family—aided and abetted by non-Polk family directors and Polk's lawyers and financial advisors—breached its fiduciary duties

---

[1] *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970).
[2] A more detailed description of the allegations in the Complaint can be found in my decision on the Defendants' Motions to Dismiss. *Buttonwood Tree Value Partners, L.P. v. R.L. Polk & Co., Inc.*, 2017 WL 3172722, at *1–5 (Del. Ch. July 24, 2017).

by engaging in a scheme to enrich itself at the expense of Polk's minority stockholders.

On July 24, 2017, I issued a Memorandum Opinion holding that the Complaint stated a claim against the Polk family for breach of fiduciary duties, but that it failed to do so as to the non-Polk family directors or Polk's law firm and financial advisor.[3] Before me now is the Plaintiffs' Motion to Compel, which seeks production of documents that the Defendants have withheld on the basis of attorney-client privilege and the work-product doctrine. The Plaintiffs argue that several of the entries on the privilege logs produced by the Defendants are deficient, and that in any event, all of the documents withheld as privileged should be produced under the *Garner* and crime-fraud exceptions. At oral argument on the Motion, I indicated that I would issue a written ruling on the applicability of these two exceptions to the documents in question. My decision follows.

---

[3] *Id.* at *6–11. At oral argument on the Motions to Dismiss, I also dismissed Polk itself and two Polk-related entities from this action.

## II. ANALYSIS

### A. The Attorney-Client Privilege and the Garner Exception

The attorney-client privilege promotes justice by encouraging candor between clients and their attorneys.[4] The privilege is codified in Delaware Rule of Evidence 502(b), which provides that

> [a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between the client or the client's representative and the client's lawyer or the lawyer's representative, (2) between the lawyer and the lawyer's representative, (3) by the client or the client's representative or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.[5]

The attorney-client privilege is critical to "the proper administration of justice," but it is not absolute.[6] There are several exceptions to the privilege, some of which are codified in Delaware Rule of Evidence 502(d).[7]

The *Garner* exception is a judicially created doctrine founded on the recognition that "where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as

---

[4] *Wal-Mart Stores, Inc. v. Ind. Elec. Workers Pension Trust Fund IBEW*, 95 A.3d 1264, 1278 (Del. 2014); *accord Zirn v. VLI Corp.*, 621 A.2d 773, 781 (Del. 1993) ("The attorney-client privilege is intended to encourage full and frank communication between clients and their attorneys.").
[5] D.R.E. 502(b).
[6] *Salberg v. Genworth Fin., Inc.*, 2017 WL 3499807, at *3 (Del. Ch. July 27, 2017).
[7] *See* D.R.E. 502(d) (enumerating exceptions to the attorney-client privilege).

4

those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show 'good cause' why the privilege should not apply."[8]  A corporation invokes the attorney-client privilege through its officers and directors; those individuals owe a duty to the stockholders to exercise the privilege in the best interests of the corporation.[9]  On the other hand, "management has a legitimate concern that its confidential communications should be allowed to remain confidential."[10]  Thus, the *Garner* exception balances "the privilege's purpose of encouraging open communication between counsel and client [against] . . . the right of a stockholder to understand what advice was given to fiduciaries who are charged with breaching their duties."[11]

*Garner* provides the following non-exhaustive list of factors a court may consider in deciding whether the exception should apply:

> [1] the number of shareholders and the percentage of stock they represent; [2] the bona fides of the shareholders; [3] the nature of the shareholders' claim and whether it is obviously colorable; [4] the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; [5] whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; [6] whether the communication related to past or to prospective actions; [7] whether the communication is of advice concerning the litigation itself;

---

[8] *Grimes v. DSC Commc'ns Corp.*, 724 A.2d 561, 568 (Del. Ch. 1998) (quoting *Garner*, 430 F.2d at 1103–04).

[9] *Zirn*, 621 A.2d at 781.

[10] *Metro. Bank & Trust Co. v. Dovenmuehle Mortg., Inc.*, 2001 WL 1671445, at \*2 (Del. Ch. Dec. 20, 2001).

[11] *de Vries v. Diamante Del Mar, L.L.C.*, 2015 WL 3534073, at \*4 (Del. Ch. June 3, 2015), *adopted by* 2015 WL 3902623 (Del. Ch. June 18, 2015).

[8] the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; [9] the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons.[12]

*Garner* itself does not say that certain factors are more important than others, but Delaware courts have typically accorded "particular significance" to three.[13] "They are: (1) the colorability of the claim; (2) the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; and (3) the apparent necessity or desirability of shareholders having the information and availability of it from other sources."[14] I view the application of these factors thusly: The first two are gatekeepers; they function as sieves to strain out frivolous attempts to vitiate the privilege. Those matters clearing that gate are subject to a balancing test to see whether the interest in discovery, or that of maintaining the privilege, is paramount.

Our Supreme Court has described the *Garner* exception as "narrow, exacting, and intended to be very difficult to satisfy."[15] A stockholder-plaintiff seeking to defeat the privilege under *Garner* bears the burden of establishing good cause to do

---

[12] *Garner*, 430 F.2d at 1104.

[13] *Salberg*, 2017 WL 3499807, at *5 (quoting *In re Fuqua Indus. Inc.*, 2002 WL 991666, at *4 (Del. Ch. May 2, 2002)).

[14] *Id.* (internal quotation marks omitted).

[15] *Wal-Mart Stores, Inc.*, 95 A.3d at 1278.

so.[16]  And *Garner* applies in "plenary stockholder/corporation proceedings" as well as Section 220 actions.[17]

The Defendants note that, unlike the typical *Garner* plenary-action proceeding, this matter does not involve a derivative action on behalf of the corporation.  They point out that the justification for *Garner* applies with the most force where defendant corporate actors assert the privilege on behalf of the very entity that the plaintiffs purport to represent derivatively, in which case the assertion of privilege on behalf of the corporation and its principals may be inimical to the corporate interest.  Here, the Plaintiffs are former stockholders, asserting a direct claim that a class of stockholders was injured by corporate fiduciaries.  The Defendants argue that, in such a case, *Garner* is inapplicable.  Logically, it appears to me that the doctrine is applicable, but that the nature of the action must be accounted for in the balance of interests that *Garner* requires.[18]  I need not so hold,

---

[16] *Salberg*, 2017 WL 3499807, at *4.

[17] *Wal-Mart Stores, Inc.*, 95 A.3d at 1278.

[18] *See Fausek v. White*, 965 F.2d 126, 131 (6th Cir. 1992) ("The fact that shareholder-plaintiffs seek recovery for themselves only may render their motives more suspect than if they bring a derivative action. Nevertheless, this is just one factor to be considered in determining whether good cause exists to deny the application of the privilege in a particular case.").  On at least one occasion, this Court has applied *Garner* in the context of a direct claim for breach of fiduciary duties. *In re Freeport-McMoRan Sulphur, Inc. S'holder Litig.*, 2005 WL 5756737, at *4 (Del. Ch. Jan. 26, 2005); *see also Krasner v. Moffett*, 826 A.2d 277, 279 (Del. 2003) (describing the underlying case in *In re Freeport-McMoran Sulphur, Inc. Shareholder Litigation* as "a stockholder class action [that] . . . alleges that a majority of the directors recommending a merger to the stockholders had disabling conflicts of interest").  And in *Garner* itself, where the plaintiffs brought direct and derivative claims, the court noted that its decision did not depend on whether the derivative claim was "in the case or out."  430 F.2d at 1097 n.11.

however, because, assuming the doctrine applies, the Plaintiffs have nonetheless failed to demonstrate that their Motion to Compel should be granted.

The parties focus on the three *Garner* factors traditionally emphasized by Delaware courts. The Plaintiffs argue that their fiduciary duty claim is colorable, that they are not engaged in a fishing expedition in seeking production of the privileged documents, and that the information contained in those documents is both necessary to prosecute the action and unavailable from other sources. The Defendants disagree. I address each of these factors in turn.

The Plaintiffs' claim for breach of fiduciary duty against the Polk family is colorable. That claim survived a motion to dismiss brought by the Defendants. I found it reasonably conceivable that the Polk family, acting as a control group, stood on both sides of the 2011 self-tender, and that therefore entire fairness applied. I then held that the Complaint adequately alleged that the self-tender was not entirely fair to the Plaintiffs. In making that determination, I relied on the allegation that stockholders "who tendered forwent, as a result, extraordinary dividends amounting to over one-third of the sale price they received, together with merger consideration in an amount *three times* the Self-Tender price, within a period of around two years."[19] Contrary to the Defendants, this Court has held that a claim is colorable

---

[19] *Buttonwood Tree Value Partners, L.P.*, 2017 WL 3172722, at *7.

under *Garner* if it has survived a motion to dismiss.[20]  Thus, this factor favors

disclosure of the privileged documents.

The next factor—"the extent to which the communication is identified versus

the extent to which the shareholders are blindly fishing"[21]—also supports disclosure.

The Plaintiffs seek production of about 1200 documents.  That is a relatively large

number of documents, but they relate to advice Polk sought in connection with the

sale of the company, the 2011 self-tender, and various restructuring options that were

considered around this time.  The Plaintiffs' surviving claim boils down to the

assertion that the Polk family breached its fiduciary duties by initiating a self-tender

---

[20] *See In re Freeport-McMoRan Sulphur, Inc. S'holder Litig.*, 2005 WL 5756737, at *4 (holding that *Garner* applies because, among other things, the plaintiffs' "claim for breaches of fiduciary duty is colorable, especially given the earlier litigation reversing the motion to dismiss"); *Oliver v. Boston Univ.*, 2004 WL 944319, at *3 & n.13 (Del. Ch. Apr. 26, 2004) (finding that the plaintiffs had a colorable claim under *Garner* in light of the denial of a motion to dismiss); *In re Fuqua Indus. Inc.*, 2002 WL 991666, at *4 ("[T]he survival of one of the plaintiffs' derivative claims after the 1997 motion to dismiss decision established that at least one colorable claim had been stated. . . ." (footnote omitted)); *In re Dairy Mart Convenience Stores, Inc.*, 1997 WL 732467, at *2 (Del. Ch. Nov. 13, 1997) ("First, under *Wolfinbarger*, it is clear that Plaintiffs have asserted a colorable claim of entrenchment, a claim that was carefully scrutinized by Chancellor Allen and survived Defendants' motion to dismiss.").  Courts in other jurisdictions have held that a claim is colorable for purposes of *Garner* if it has survived a motion to dismiss.  *See, e.g.*, *Fox v. Riverview Realty Partners*, 2013 WL 12306483, at *3 (N.D. Ill. Dec. 10, 2013) (applying *Garner* on the grounds that, among other things, the plaintiffs "have asserted colorable claims, which have survived a motion to dismiss"); *In re Gen. Instrument Corp. Sec. Litig.*, 190 F.R.D. 527, 529 (N.D. Ill. 2000) ("Here, it must be said that plaintiffs' derivative action is at least a colorable claim; it has withstood a motion to dismiss."); *In re Pfizer Inc. Sec. Litig.*, 1993 WL 561125, at *13 (S.D.N.Y. Dec. 23, 1993) ("In terms of the second category, that plaintiffs' underlying suit presents at least a colorable claim is established by Judge Keenan's December 21, 1990 denial of a motion to dismiss for failure to state a claim . . . ."); *In re Bairnco Corp. Sec. Litig.*, 148 F.R.D. 91, 99 (S.D.N.Y. 1993) ("Plaintiffs' securities fraud allegations are of colorable merit, with the surviving claim . . . having withstood a motion to dismiss.").
[21] *Garner*, 430 F.2d at 1104.

without informing Polk's minority stockholders that it intended to put the company up for sale, among other things. And part of the Plaintiffs' theory is that at least one of the restructuring options—converting the company to Subchapter S status—was simply "a ruse to eliminate minority shareholders."[22] The documents sought, then, are tailored to the Plaintiffs' allegations, and there is no indication that "production will . . . be overly burdensome or require additional searches by the company."[23]

While these two factors support disclosure, they mean simply that the Plaintiffs have cleared the initial hurdle; my decision then turns on the question whether the information contained in the privileged documents is both necessary and unavailable from other sources.[24] This Court has held that information found in privileged communications is available from other sources when depositions may allow a stockholder-plaintiff to obtain the information without intruding on the attorney-client privilege.[25] That is the case here. The Plaintiffs have yet to depose

---

[22] Pls.' Opening Br. 7.

[23] *de Vries*, 2015 WL 3534073, at *8.

[24] *See Bray v. Okla. Publ'g Co.*, 1990 WL 108313, at *2 (Del. Ch. July 26, 1990) (noting that, while the plaintiffs had asserted a colorable claim and were not engaged in a fishing expedition, "these factors [are not] sufficient to establish good cause. One of the more significant factors in the balancing test, as I see it, is the necessity of the information and its availability from other sources. Based upon my *in camera* review of the documents, I am satisfied that the Intervenor can obtain the information in the privileged documents from other sources"); *see also RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2003 WL 41996, at *5 (S.D.N.Y. Jan. 6, 2003) ("The apparent necessity of the information and its availability from other sources is considered the most important factor and is stressed by courts when undertaking the *Garner* analysis." (collecting cases)).

[25] *See In re Fuqua Indus., Inc. S'holders Litig.*, 1999 WL 959182, at *3 (Del. Ch. Sept. 17, 1999) ("I am not satisfied that Plaintiffs have exhausted every available method of obtaining the information they seek; further depositions may provide the answers they seek without infringing

a single party witness, though they have deposed non-party Jeff Risius, one of Polk's financial advisors. And there is no reason to believe that depositions of the Defendants (and other fact witnesses) would fail to reveal non-privileged information about the Polk family's plans regarding the self-tender, the sale of the company, and various restructuring possibilities. That is the information the Plaintiffs need to prove their allegation that the Polk family hatched a scheme to benefit itself to the detriment of the minority stockholders. This factor therefore tips against disclosure of the privileged documents.

The Plaintiffs suggest that the documents they seek will help them prepare for the depositions they plan to take, and that in any case, the Defendants may simply lie about the events in question when they are deposed. But that is not enough to show good cause under *Garner*. Privileged documents will often be useful to attorneys preparing to depose witnesses, and there is always the concern that some witnesses will be less than truthful during questioning. The question is not whether it is easier to obtain the information at issue from privileged documents than from

---

upon the attorney-client privilege."). True, in *Lee v. Engle*, 1995 WL 761222, at *3 (Del. Ch. Dec. 15, 1995), this Court held that *Garner* was satisfied where "[t]he only *possible* alternative to th[e] information [in the privileged documents] may be an avoidable, unnecessarily cumbersome and expensive route of deposing in detail the individual directors." But at least some of the documents in question there were not privileged in the first place, because the attorney who received and reviewed them was not acting as legal counsel when doing so. *Id.* And non-Delaware authority supports the proposition that a stockholder-plaintiff cannot satisfy *Garner* simply by asserting that the information sought is unavailable elsewhere, especially when the plaintiff has "made no effort to obtain [the] information . . . from other non-privileged sources." *Ward v. Succession of Freeman*, 854 F.2d 780, 786 (5th Cir. 1988).

11

depositions of fact witnesses, or whether access to privileged communications will make it easier to take depositions. If the Court were to adopt that test, *Garner*'s scope would expand significantly, an outcome contrary to our Supreme Court's admonition that the exception is "narrow, exacting, and intended to be very difficult to satisfy,"[26] and inimical to the salutary protection the privilege provides. Instead, the question is whether the Plaintiffs "have exhausted every available method of obtaining the information they seek."[27] This the Plaintiffs have not done.

Accordingly, I hold that the *Garner* exception does not apply to the documents withheld as privileged by the Defendants.[28]

*B. The Crime-Fraud Exception*

The crime-fraud exception rests on the premise that "when a client seeks out an attorney *for the purpose* of obtaining advice that will aid the client in carrying out a crime or a fraudulent scheme, the client has abused the attorney-client relationship and stripped that relationship of its confidential status."[29] In other words, the privilege ceases to promote justice, and thus cannot be maintained, where it would become a tool to promote crime or fraud. The exception is codified in Delaware

---

[26] *Wal-Mart Stores, Inc.*, 95 A.3d at 1278.

[27] *In re Fuqua Indus., Inc. S'holders Litig.*, 1999 WL 959182, at *3.

[28] For the same reasons that *Garner* does not apply to the privileged documents, I will not order production of documents withheld on the basis of the work-product doctrine. *See Wal-Mart Stores, Inc.*, 95 A.3d at 1280–81 ("A careful reading of the *Garner* factors demonstrates that they overlap with the required showing under the Rule 26(b)(3) work-product doctrine.").

[29] *Princeton Ins. Co. v. Vergano*, 883 A.2d 44, 55 (Del. Ch. 2005) (emphasis added).

Rule of Evidence 502(d)(1), which provides that the privilege does not apply "[i]f the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud."[30]

To invoke the crime-fraud exception, "a mere allegation of fraud is not sufficient."[31] Instead, the proponent of the exception must "make[] a prima facie showing that the confidential communications were made in furtherance of a crime or fraud."[32] The client must intend the communications "to be used as a basis for criminal or fraudulent activity, whether or not that criminal or fraudulent intent ever comes to fruition."[33] Put differently, "the advice must advance, or the client must intend the advice to advance, the client's criminal or fraudulent purpose."[34] And it is not enough that the privileged communications "would provide an adversary with evidence of a crime or fraud."[35] Nor can the exception be invoked simply because the advice relates to the crime or fraud.[36] Finally, the exception does not apply

---

[30] D.R.E. 502(d)(1).
[31] *Princeton Ins. Co.*, 883 A.2d at 54.
[32] *In re Sutton*, 1996 WL 659002, at *11 (Del. Super. Aug. 30, 1996).
[33] *Id.*
[34] *In re Grand Jury Subpoena*, 745 F.3d 681, 693 (3d Cir. 2014).
[35] *Princeton Ins. Co.*, 883 A.2d at 59 n.26 (quoting *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995)).
[36] *In re Grand Jury Subpoena*, 745 F.3d at 693.

"merely upon a showing that the client communicated with counsel while the client was engaged in criminal [or fraudulent] activity."[37]

The Defendants argue that the crime-fraud exception is inapplicable here because the Plaintiffs have disclaimed any intention of bringing a fraud claim.[38] As the Defendants point out, at the motion-to-dismiss stage, the Plaintiffs styled their claim as one for breach of fiduciary duties stemming from, among other things, the failure to disclose several material facts in connection with the 2011 self-tender, and specifically disclaimed accusations of fraud.[39] I note that the rationale underlying the crime-fraud exception—that the administration of justice is undermined when individuals seek legal advice to assist them in breaking the law[40]—appears to apply

---

[37] *In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir. 1986); *see also In re Sutton*, 1996 WL 659002, at *12 ("In the instant case, this Court finds that the State has not made a prima facie showing that any confidential communications between Parretti and Respondents were in furtherance of a crime or fraud. The State has asserted merely that Parretti has engaged in fraudulent conduct in the Court of Chancery during the time he was represented by Respondents. The State has made no allegations or showing that any communications between Parretti and Respondents was intended by Parretti to be used to facilitate that alleged fraudulent activity." (footnote omitted)); Paul R. Rice, *Attorney-Client Privilege in the United States* § 8:17 (2017) ("[T]he mere fact that the client consulted the attorney before committing the illegal or fraudulent act may not, by itself, establish that the client consulted the attorney with the purpose of using his advice to assist in the perpetration of the act.").

[38] *See* Nov. 1, 2017 Oral Arg. Tr. 31:11–16 ("MS. NUSSBAUM: And even if there was a showing here by prima facie evidence . . . of a reasonable basis to conclude a communication was made in furtherance of a breach of fiduciary duty, that would not be sufficient for the crime fraud exception.").

[39] *See* Pls.' Answering Br. 57 n.38 ("Both the Polk Defendants and SRR argue that Plaintiffs' disclosure claims 'sound in fraud' and therefore the heightened pleading standards of Chancery Court Rule 9 apply. That is wrong. The pleading standards for claims asserting breaches of the duty of disclosure are governed by Chancery Court Rule 8.").

[40] *See In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1038 (2d Cir. 1984) ("Whereas confidentiality of communications and work product facilitates the rendering of sound legal advice, advice in furtherance of a fraudulent or unlawful goal cannot be considered

14

with equal force to a client who hires an attorney to help him commit an intentional breach of fiduciary duty premised on deceiving stockholders about a significant transaction.[41]  Nonetheless, I need not decide whether the crime-fraud exception covers communications designed to further fraud-like intentional breaches of fiduciary duty, because assuming that it does, the Plaintiffs have failed to show that it applies here.

The Plaintiffs' invocation of the crime-fraud exception suffers from a fatal flaw: the absence of any evidence that the Defendants sought the advice of their attorneys for the purpose of accomplishing their allegedly fraudulent scheme.  The Plaintiffs aver that the 2011 self-tender was fraudulently induced via a failure to disclose several material facts, including that the Polk family was considering selling the company.  And, as the privilege logs reveal, the Defendants consulted with attorneys about various restructuring options, including the self-tender.  But there is no indication that the Defendants intended to use these consultations to further the purportedly fraudulent scheme, or that the advice received during these consultations

---

'sound.' Rather advice in furtherance of such goals is socially perverse, and the client's communications seeking such advice are not worthy of protection.").

[41] *See, e.g.*, *Mueller Indus., Inc. v. Berkman*, 927 N.E.2d 794, 809 (Ill. App. Ct. 2010) ("Here, it is undisputed that Berkman owed Mueller a fiduciary duty, and Mueller has made out a *prima facie* case that Berkman nonetheless profited from a separate relationship with one of Mueller's suppliers, without Mueller's knowledge. Under these circumstances, we find that the intentional breaches of fiduciary duty alleged here were on a par with the level of fraud necessary to establish the crime-fraud exception."), *abrogated on other grounds by People v. Radojcic*, 998 N.E.2d 1212 (Ill. 2013).

helped them perpetrate the scheme. The Plaintiffs have shown only that, during the alleged fraud, the Defendants spoke with counsel about matters related to the transaction in connection with which they allegedly provided inadequate disclosures; the 2011 self-tender. That is not enough, to my mind, to invoke the crime-fraud exception.[42]

The Plaintiffs argue that the crime-fraud exception must apply because the privileged documents may be "indicative of matters and transactions which would show knowledge [on the Defendants' part] that the disclosures in the self-tender were inaccurate."[43] The Plaintiffs are wrong. It is of course true that invasion of the privilege here might disclose relevant information helpful to the Plaintiffs' case. As this Court has noted, however, the crime-fraud exception does not vitiate the privilege upon a showing that the privileged communications would provide the

---

[42] *See, e.g.*, *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 643–44 (8th Cir. 2001) ("To be sure, a client may seek legal advice in furtherance of intentional securities law fraud, and the crime-fraud exception will then apply. But it is not enough to show that an attorney's advice was sought before a decision was made not to disclose information that is alleged, as a matter of hindsight, to have been material."); *In re Sealed Case*, 107 F.3d 46, 50 (D.C. Cir. 1997) ("Companies operating in today's complex legal and regulatory environments routinely seek legal advice about how to handle all sorts of matters, ranging from their political activities to their employment practices to transactions that may have antitrust consequences. There is nothing necessarily suspicious about the officers of this corporation getting such advice. True enough, within weeks of the meeting about campaign finance law, the vice president violated that law. But the government had to demonstrate that the Company sought the legal advice with the intent to further its illegal conduct. Showing temporal proximity between the communication and a crime is not enough"); *Duttle v. Bandler & Kass*, 127 F.R.D. 46, 56 (S.D.N.Y. 1989) ("It is not enough that there was merely a temporal coincidence between the fraudulent or criminal activity and the client's consultation with counsel.").

[43] Nov. 1, 2017 Oral Arg. Tr. 15:14–16.

16

movant with evidence useful to demonstrating a crime or fraud.[44] "If it did, the privilege would be virtually worthless because a client could not freely give, or an attorney request, evidence that might support a finding of culpability."[45] A privileged communication may reveal that a fraudster knew the information he gave his victim was false. But the crime-fraud exception would not apply to that communication absent a showing that the fraudster consulted his attorney *in order to* further his fraudulent scheme.[46] The Plaintiffs point to nothing indicating such is the case here. Because the Plaintiffs have failed to make a prima facie showing that the privileged communications at issue were made in furtherance of a fraudulent scheme, the crime-fraud exception does not apply.[47]

### III. CONCLUSION

For the foregoing reasons, the Motion to Compel is denied to the extent that it seeks production of privileged documents and attorney work product based on the *Garner* and crime-fraud exceptions. The parties shall confer as to whether a special

---

[44] *See Princeton Ins. Co.*, 883 A.2d at 59 n.26 (noting that the "exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud" (quoting *In re Richard Roe, Inc.*, 68 F.3d at 40)).

[45] *Id.* (quoting *In re Richard Roe, Inc.*, 68 F.3d at 40).

[46] *See id.* at 55 (noting that the crime-fraud exception is "bottomed on the assumption that the client has actively sought out legal advice from the lawyer, in order for the client to plan how he will carry out a crime or fraud").

[47] The Plaintiffs have not requested that I conduct an *in camera* review of the privileged materials to determine whether the crime-fraud exception is applicable here. *See In re Sutton*, 1996 WL 659002, at *13 (noting that, to justify *in camera* review of privileged materials, the proponent of the crime-fraud exception must offer "a factual basis adequate to support a good faith belief by a reasonable person . . . that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies").

discovery master should be appointed to address the purported deficiencies in the privilege logs. To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III